## Plummer v. Chesapeake & Ohio Railway Co.

(Decided April 12, 1911.)

### Appeal from Lewis Circuit Court.

1. Foreign Railway Corporations—Right to Purchase Lines of Railway in this State.—A foreign railway corporation before it acquires the right to construct a line of railway in this State or before it purchases an existing line of railway, must comply with Section 765 of the Kentucky Statutes and become organized as a corporation under the laws of this State by filing articles of incorporation in the manner provided in Section 763 of the Kentucky Statutes.

2. Foreign Railway Corporations—Right to Operate a Railway in this State.—A foreign railway corporation may obtain the right by contract or lease to operate and maintain an existing line of railway in this State in the manner provided in Section 841 of the Kentucky Statutes.

3. Constitution, Section 211—Construction of.—Section 211 of the Constitution, providing that a foreign railway corporation shall not be entitled to the right of eminent domain or have power to acquire the right of way or real estate for depot or other uses until it shall have become a body corporate under the law of this State, applies to corporations that desire to acquire by purchase existing lines of railway as well as to corporations that desire to construct lines of railway.

4. Kentucky Statutes—Sections 765 and 841—Construction of.—Section 765 applies to corporations that desire to construct or purchase lines of railway in this State; Section 841 applies to corporations that desire to lease established lines of railway.

5. Incorporation in this State of Foreign Railway Corporations—Effect of.—The incorporation in this State of a foreign railway corporation will not divest it of its original citizenship or deprive it of any rights or privileges it enjoys as a foreign railway corporation.

6. Interstate Commerce—Interference with.—The requirement that foreign railway corporations desiring to purchase or operate railways in this State must become incorporated in this State is not invalid as a burden upon Interstate Commerce.

7. Conveyance of Property by a Domestic Railway Corporation—

## Plummer v. Chesapeake & Ohio Railway Co. 103

When Void.—A conveyance by a home corporation to a foreign corporation that has not complied with the laws of this State is void as against public policy, and the validity of the conveyance may be drawn in question in a suit against the domestic corporation by a party injured by the neglect of the grantee corporation.

ALLEN D. COLE, S. J. PUGH and A. R. CAMPBELL for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellant Plummer while engaged for a shipper in loading a railroad car with tan bark was injured by the negligence of the trainmen in moving without notice to him the car in which he was at work. To recover damages for the injuries thus sustained he brought suit against the Chesapeake & Ohio Railway Company, a Virginia corporation, and the Chesapeake & Ohio Railway Company of Kentucky, a Kentucky corporation. The lower court directed the jury to return a verdict in favor of the Chesapeake & Ohio Railway Company of Kentucky, and from the judgment upon this verdict this appeal is prosecuted.

It appears from the admitted facts that for several years prior to July 1, 1907, the railway and its appurtenances were owned by the Chesapeake & Ohio Railway Company of Kentucky, and that during this period the railway was operated by the Chesapeake & Ohio Railway Company as lessee. That on July 1, 1907, The Chesapeake & Ohio Railway Company of Kentucky executed and delivered to the Chesapeake & Ohio Railway Company a deed of conveyance, by which it transferred and conveyed to it in fee simple the railway with all the rights, privileges and appurtenances appertaining thereto, and all property, real and personal, possessed or used in connection therewith. That the Chesapeake & Ohio Railway Company of Virginia, in 1893, when it first undertook as lessee to operate the Kentucky railway, complied with section 841 of the Kentucky Statutes, hereafter copied, but has made no attempt to comply with section 765 of the Kentucky Statutes, hereinafter set forth. Its contention, which was sustained by the lower court, being that as it had while operating the road as lessees complied with section 841, this act relieved it from the necessity of complying with section 765, when it became the purchaser of the railway. The correctness of the ruling of the trial court depends primarily upon the question, whether or not this compliance with section

841 of the Kentucky Statutes was sufficient under the laws of this State to authorize the Chesapeake & Ohio Railway Company to purchase, own and operate the railway in this State, and to enable the Kentucky corporation to divest itself of the title by the conveyance. If it was, the appellee Chesapeake & Ohio Railway Company of Kentucky was not answerable in damages to the appellant because the injury to him happened after the conveyance was made. On the other hand, if the compliance with section 841 of the Kentucky Statutes was not sufficient to authorize the Chesapeake & Ohio Railway Company to purchase, own and operate the railway, and to enable the Kentucky corporation to divest itself of title by the conveyance, then the Chesapeake & Ohio Railway Company of Kentucky was jointly and severally liable with it, as it sustained at the time of the injury the relation of lessor to the Chesapeake & Ohio Railway Company, and consequently was responsible to persons not employes of the operating company for injuries sustained by them on account of the negligence of the operating company. McCabe's Admx. v. Maysville & B. S. R. Co., 112 Ky. 861; Illinois Central R. Co. v. Sheegog's Admr., 126 Ky. 252.

Only two questions are presented by the record for decision, (1) was the purchase and conveyance made on July 1, 1907, made and executed in accordance with the constitution and laws of this State, and therefore sufficient to divest the selling corporation of title. (2) Assuming that it was not, can the validity of the purchase and conveyance be questioned by any person other than the State of Kentucky. Taking up the first question, its solution renders it necessary that we should construe section 211 of the constitution of the State, reading as follows:

"No railroad corporation organized under the laws of any other State, or of the United States, and doing business, or proposing to do business, in this State, shall be entitled to the benefit of the right of eminent domain, or have power to acquire the right of way or real estate for depot or other uses, until it shall have become a body-corporate pursuant to and in accordance with the laws of this Commonwealth."

Section 765 of the Kentucky Statutes, which provides that:

"No railroad corporation, organized or created by or under the laws of any other State, shall have the right to condemn land for, or acquire the right of way for, or

purchase or hold land for its depots, tracks, or other pur-
poses, until it shall have first filed in the office of the Sec-
retary of State of this State, in the manner provided
in the first article of this chapter, its acceptance of the
Constitution of this State, and shall have become organ-
ized as a corporation under the laws of this State, which
it may do by filing in the offices of the Secretary of State
and the Railroad Commission articles of incorporation in
the manner and form provided in section 763 of this
article.''

And section 841 of the Kentucky Statutes, reading:

''No company, association or corporation created by,
or organized under, the laws or authority of any State or
country other than this State, shall possess, control,
maintain or operate any railway or part thereof, in this
State until, by incorporation under the laws of this State,
the same shall have become a corporation, citizen and
resident of this State. Any such company, association or
corporation may, for the purpose of possessing, control-
ling, maintaining or operating a railway or part thereof
in this State, become a corporation, citizen and resident
of this State by being incorporated in the manner fol-
lowing, namely: By filing in the office of the Secretary of
State, and in the office of the Railroad Commission, a
copy of the charter or articles of incorporation of such
company, association or corporation, authenticated by its
seal and by the attestation of its president and secretary,
and thereupon, and by virtue thereof, such company,
association or corporation shall at once become and be a
corporation, citizen and resident of this State. The Sec-
retary of State shall issue to such corporation a certifi-
cate of such incorporation.''

In the consideration of the case before us, it is not
necessary to consider or discuss the power of the State
to directly prohibit a foreign railway corporation from
owning property or doing business within its territory,
or its power to impose such restrictions and conditions as
would virtually amount to a denial of this right; as
neither the constitution nor the statute attempt to pro-
hibit a foreign railway corporation from purchasing a
domestic railway corporation, nor do they place any un-
reasonable restrictions or limitations upon the right so
to do. The conditions annexed to the right of a foreign
railway corporation to come into this State and purchase
a domestic railway corporation and operate the same are
neither prohibitory nor unreasonably restrictive. The
only terms imposed are that before the foreign railway

corporation purchases or undertakes to operate a railway in this State it must comply with our laws enacted for the purpose of placing foreign and domestic corporations upon the same footing. Section 211 of the constitution, before quoted, as well as section 202, reading: "No corporation outside the limits of this State shall be allowed to transact business within this State on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this Commonwealth," and the statutes enacted in pursuance thereof were not designed to and do not impose upon foreign corporations any limitations or burdens not put upon home corporations. They were only intended to place as near as may be foreign and domestic corporations upon an equality under the law. The foreign corporation is not discriminated against, nor is it extended by the State any favors, not granted to domestic corporations. If a foreign corporation wishes to purchase, own or operate a railway in this State, it may come here under the protection of our laws and enjoy all the privileges and rights that are allowed to home corporations, and in addition those guaranteed by the Federal Constitution and laws. There is no reason why it should be granted any greater, or why any distinction or discrimination should be made by the State between corporations engaged in the same line of business, whether they be foreign or domestic. One should not be allowed, so far as the operation and effect of State laws are concerned, to do business upon more favorable conditions than the other. As section 202 of the constitution merely declares a general principle that shall be observed in the legislative treatment of corporations, we do not think it worth while to further allude to it; but, section 211 relates directly to the matter in hand and requires more careful consideration. This section provides that a foreign railway corporation shall not be entitled "to the benefit of the right of eminent domain, or have power to acquire the right of way or real estate for depot or other uses until it shall have become a body corporate pursuant to and in accordance with the laws of this Commonwealth." We think it clear this language should not be limited in its application to a foreign railway corporation that desires to come into this State for the purpose of constructing a line of railway. This narrow view of the meaning of this section would exclude from its operation a foreign railway corporation that purchased outright an existing domestic railway corpora-

tion.   It would impose upon corporations desiring to build a line of railway and seeking to acquire under the right of eminent domain real estate or right of way for such purpose the duty of becoming incorporated under the laws of this State, and exempt from this duty a foreign corporation that acquired by purchase from another corporation all the real estate and rights of way that it needed in the conduct of its business.   There seems no reason why a distinction like this should be permitted. We are unable to perceive why one corporation under the conditions stated should be allowed greater privileges than another.   If one corporation cannot except by observing certain requirements acquire rights of way for the purpose of building a road and operating it, neither should another be permitted to purchase a road already built for the purpose of operating it without complying with such requirements.   A construction that made a distinction like this would defeat in part the purpose of the constitution, and create inequality and discrimination that should not exist.   We are therefore of the opinion that section 211 of the constitution applies to every foreign railway corporation that owns and operates a railway in this State, whether the railway so owned and operated was constructed by the foreign corporation or purchased by it from a domestic or other foreign corporation.

The next question is—How is a foreign railway corporation that desires to purchase, hold and operate a line of railway in this State to become a body corporate under the laws of this Commonwealth?   The answer to this question is found in section 765 of the Kentucky Statutes, which points out the manner in which the constitutional provision may be complied with.   This section was enacted for the purpose of furnishing a means by which foreign railway corporations desiring to purchase, hold and operate railways in this State might become in the language of the section ''a body corporate pursuant to and in accordance with the laws of this Commonwealth.''   As the legislature has pointed out in section 765 the manner in which a foreign railway corporation desiring to purchase, hold and operate a railway in this State may become incorporated in this State, this method must be pursued to the exclusion of all others.   A compliance with this section is a condition precedent to its right to engage in this character of business in this State. Until it has done this, it may operate and control but it

cannot purchase or own any railway in this State. We think the legislature had the unquestioned authority to prescribe the terms upon which foreign railway companies should be permitted to ''acquire the right of way for, or purchase or hold land for its depots, tracks or other purposes'', and as it has pointed out the terms, their observance is an indispensable prerequisite to the exercise of the privilege. This section was not intended to provide a means by which foreign railway corporations that operated under lease or contract lines of railway might become incorporated. The incorporation of such companies is provided for in section 841 of the Kentucky Statutes. Under this last mentioned section a method is provided by which foreign railway corporations that ''possess, control, maintain or operate any railway or part thereof in this State may become incorporated.'' There is no conflict between these sections. They were enacted for different purposes and to meet different conditions. One refers to foreign corporations that own the title to and operate railways in this State, the other to foreign corporations that lease lines of railway in this State for the purpose of controlling, possessing, maintaining or operating the same—the title remaining in the lessor corporation. It is manifest from the language of section 765 that it was not intended to embrace the mere conduct or operation of a railway. Therefore it became necessary to enact section 841, to provide the manner in which a foreign corporation might obtain under lease or contract the right to control, maintain and operate a railway in this State. In making provision for the incorporation of lessee corporations the legislature saw proper to prescribe a different method from that adopted to apply to foreign corporations that desired to actually purchase and own a railway in this State. Why this distinction was made it is not essential in the consideration of the question before us to inquire. As the Chesapeake & Ohio Railway Company did not become incorporated in the only manner provided by law for its incorporation as a purchaser of a railway, the conveyance made to it was not valid or effectual to invest it with title to the railway it attempted to purchase. Its compliance with section 841 did not leave it in any better or other position than it would have been if it had made no attempt to observe the requirements of that section. But, it is insisted by counsel that such a construction as we have put upon these sections and the corresponding duty

imposed upon foreign railway companies has the effect of rendering section 765 unconstitutional in that it is an attempted regulation of and interference with interstate commerce. It is said that the result of this construction is that no corporation except one created under and brought into existence by the laws of this State will be authorized to operate a railroad in this State or to engage in interstate commerce therein. But we are not ready to agree with counsel in their interpretation of the effect of the construction we have given these sections. The requirement that a foreign railway corporation before it is permitted to purchase, own and operate a railway in this State must become incorporated in the manner provided by the laws of this State is not an interference with or regulation of interstate commerce. It does not conflict with the Federal constitution or any laws made in pursuance thereof. Nor does it follow that the incorporation of a foreign railway company in this State will divest it of its original citizenship or deprive it of any rights or privileges it enjoys as a foreign corporation. What these rights and privileges are or may be, it would be outside the scope of the question before us to undertake to define, and we shall not attempt to do so. We are only concerned with the single question—whether or not it is within the power of the State to impose the reasonable terms that our constitution and statute do upon foreign railway corporations as a condition precedent to their coming into this State and acquiring by purchase lines of railway therein. Upon this point we have not been furnished with any authority in conflict with the views expressed. The Chesapeake & Ohio Railway Company of Virginia before its purchase of the Kentucky corporation was engaged in interstate commerce as the lessee of the Kentucky corporation. While the Virginia corporation was holding and operating the Kentucky corporation as such lessee, by its compliance with section 841 of the Kentucky Statutes it became in the language of that section "a corporation, citizen and resident of this State". If upon its purchase of the Kentucky corporation it had complied with section 765 of the Kentucky Statutes, it would have become "organized as a corporation under the laws of this State." It would therefore seem that so far as our laws can affect the question, the corporation that has complied with section 841 is to the same extent a Kentucky corporation as is a foreign corporation that complies with section 765. The

only difference between the two sections is in the means or method by which the foreign corporation is converted into or becomes a Kentucky corporation. If a forced compliance with one is an interference with or regulation of interstate commerce, so is a forced compliance with the other. If one section is invalid because it places a burden upon interstate commerce, so is the other. The question then comes to this—Can the State impose upon a foreign railway corporation as a condition precedent to its right to purchase, own or hold and operate a railway in this State the duty of becoming in any manner or for any purpose a corporation and citizen of this State? If it can, then both sections 765 and 841 are valid exercises of power. If a foreign corporation desires to lease a railway in this State, it must perform the conditions imposed by section 841; and if it desires to purchase a railway in this State, it must observe the conditions imposed by section 765. So far as the principle involved is concerned, the requirements imposed by one section cannot be distinguished from those imposed by the other. In St. Louis & San Francisco Ry. Co. v. James, 161 U. S. 545, 40 L. ed., 802, the Supreme Court had before it a question in some respects similar to that involved in this case. After saying that—

"It must be regarded to begin with as finally settled by repeated decisions of this Court that for the purpose of jurisdiction in the Federal courts, a State corporation is deemed to be indisputably composed of citizens of such State".

the Court in the course of the opinion, proceeded to say—

"It is competent for a railway corporation organized under the laws of one State, when authorized so to do by the consent of the State which created it to accept authority from another State to extend its railroad in such State and to receive a grant of powers to own and control by lease or purchase railroads therein, and to subject itself to such rules and regulations as may be prescribed by the second State. Such legislation on the part of two or more States is not in the absence of inhibitory legislation by Congress, regarded as within the constitutional prohibition of agreements or compacts between States. Such corporations may be treated by each of the States whose legislative grants they accept as domestic corporations. The presumption that a corporation is composed of citizens of the State which created it accompanies such corporation when it does business in another State, and

it may sue or be sued in the Federal courts in such other State as a citizen of the State of its original creation.''

In Louisville, New Albany & Chicago Ry. Co. v. Louisville Trust Company, 174 U. S. 552, 43 L. ed., 1081, the Supreme Court again said—

''This Court has often recognized that a corporation of one State may be made a corporation of another State by the legislature of that State in regard to property and acts within its territorial jurisdiction.''

Again in Southern Railway Co. v. Allison, 190 U. S. 326, 47 L. ed., 1078, it appears that the State of North Carolina enacted a statute containing some of the features of both sections 765 and 841 of our statute, providing a means by which foreign railway corporations desiring to own property and carry on business in that State might become domestic corporations.   In compliance with this statute, the Southern Railway Company, a Virginia corporation, became a North Carolina corporation, and the question presented to the Court was, whether or not this compliance operated to divest the corporation of the right to remove to the Federal court a suit brought against it in a State court of North Carolina. In the course of the opinion holding that it did not, the Court said—

''So it seems that a corporation may be made what is termed a domestic corporation or in form a domestic corporation of a State in compliance with the legislation thereof by filing a copy of its charter and by-laws with the Secretary of State, yet such fact does not affect the character of the original corporation.   It does not thereby become a citizen of the State in which a copy of its charter is filed, so far as to affect the jurisdiction of the Federal courts upon a question of diverse citizenship.''

In each of these cases the Court had before it legislation in substance similar to ours, but in neither did the Court hold that the legislation was invalid.   On the contrary, its validity was impliedly at least recognized. Without further extending the opinion upon this branch of the case we are of the opinion that a compliance by the Virginia corporation with section 765 of the Kentucky Statutes was essential to its purchase and ownership of the Kentucky corporation, and as it did not do this, it cannot be treated in this State as the owner of the Kentucky corporation.   It follows from this that the lower court erred in directing a dismissal of the action as to the Kentucky corporation, unless it be that the ap-

pellant could not attack the validity of the purchase and conveyance, or, that notwithstanding the failure of the purchasing corporation to comply with the statute the title passed out of the grantor and to it by the conveyance. If either of these questions should be answered adversely to the appellant, the ruling of the lower court must be sustained. It is insisted by counsel for the appellee corporation that the purchase and conveyance in question is good as against all persons until assailed by the State of Kentucky in a direct proceeding instituted by it for that purpose; and, this being so, the appellant Plummer could not attack its validity or set up in avoidance of its plea the fact that the purchaser had failed to comply with the laws of this State necessary to make valid the purchase and conveyance. It is undoubtedly well settled that no person except the State can raise the objection that a corporation is holding real estate in excess of its corporate power. Kentucky School Board v. King, 127 Ky. 824; Fritts v. Palmer, 132 U. S. 282; 33 L. ed., 316; 1 Beech on Private Corporations, sec. 378; 5 Thompson on Private Corporations (2 ed.) sec. 2391. But, no attempt is made in this proceeding to forfeit the property of the appellee railway company, or to divest the purchasing corporation of any estate acquired by its purchase. The only question presented is—did the appellant Plummer have the legal right in avoidance of the defense made by the appellee corporation to assert and establish that the defense relied upon was not authorized by law. In other words, the appellee corporation when sued, set up as a complete defense to the action that previous to the accrual of the cause of action asserted, it had parted with its title to the railway. In avoidance of this plea the appellant Plummer insisted below, and insists here, that it had not done this. We think he had the right to make this issue, and to put the appellee corporation upon proof of the sufficiency of this defense. But, if this be conceded, the question yet remains—did the conveyance made by it divest it of title to the property? It is not to be doubted that the Kentucky corporation had the right to sell its railway and to execute a conveyance that would divest it of all title to it. Neither the constitution nor the statute forbids a domestic railway corporation from disposing of its property and franchises, nor do they prescribe any terms that must be complied with by the selling corporation before it can make a conveyance. The duty of complying with the statute is

imposed alone upon the purchasing corporation. We have then sharply presented the further question—whether or not a domestic railway corporation can, by making a conveyance to a foreign corporation, not authorized to purchase, own or hold the property conveyed, relieve itself of the obligations imposed upon it by the State of Kentucky as a condition to its right to acquire a railway in this State. We think considerations of public policy forbid the legality of a transaction like this. A railway corporation created and organized under the laws of this State, given authority to exercise the right of eminent domain and to enjoy the other privileges and benefits conferred upon railway corporations, owes to the State in consideration of these privileges certain duties that it should not be allowed to divest itself of by disposing of its property to a corporation not authorized to purchase or hold it. If this course of conduct was legalized, then it would not be necessary for any railway corporation to become or remain a domestic corporation or citizen of this State longer than was necessary for it to acquire such rights of way and privileges as it desired. When it had received from the State all the benefits the State could confer, it could dispose of its property to some foreign corporation not authorized by our laws to purchase or hold it, and the result would be that we would soon have no domestic railway corporations if a more agreeable place of abode could be found. The statute does not impose any penalty upon a foreign railway corporation for purchasing or operating a railway without a compliance with our laws, and the only method by which a corporation could be forced to acknowledge the laws of this State would be by an appropriate action on the part of the State to dispossess it of its rights under the purchase. But we are not disposed to concede that a domestic railway corporation may trifle with the authority of the State by disposing of its holdings to a corporation not authorized to acquire them or to consent that a foreign railway corporation may acquire title to property in violation of our laws and hold the same until the State sees proper to take suitable action against it. The constitution and statute prohibit a foreign railway corporation from purchasing a railway in this State until it shall have complied with the laws of this State; but it is manifest that if, notwithstanding these provisions of the law, a foreign corporation may acquire by purchase a line of railway in this State, that their efficiency would be

greatly impaired and for a time at least virtually nullified. In view of the public nature of railway corporations, and the duties they are under to the people and the State, we do not believe that a domestic railway corporation can divest itself of title or make a valid conveyance to a corporation not authorized by the laws of this State to acquire the property. It is true that it is held in many cases that although the grantee in a conveyance may not be authorized to purchase the property conveyed, that yet a conveyance to it by a grantor authorized to convey will divest it of title and lodge the title in the grantee. But we have not found any case in which this doctrine was attempted to be applied to conditions such as exist in the case before us. In Fritts v. Palmer, 132 U. S. 282, 33 L. ed., 316, the facts were that one Groshom conveyed certain mining property in the State of Colorado to the Comstock Mining Company, a Missouri corporation. The mining company had not at the time of its purchase, and did not afterwards, comply with the laws of Colorado prescribing the terms and conditions upon which a foreign corporation might do business in that State. After the conveyance to the mining company by Groshom, he disposed of the property to other persons and in a contract between them and the vendees of the mining company the question was raised that the conveyance to the mining company was void because it had no authority to acquire property in that State. But in denying this claim, the Supreme Court of the United States said:

"It is not for the judiciary, at the instance or for the benefit of private parties claiming under deeds executed by the person who had previously conveyed to the corporation, according to the forms prescribed for passing title to real estate, to inflict the additional and harsh penalty of forfeiting, for the benefit of such parties, the estate thus conveyed to the corporation and by it conveyed to others. * * * If the legislature had intended to declare that no title should pass under a conveyance to a foreign corporation purchasing real estate before it acquires the right to engage in business in the State, and that such a conveyance should be an absolute nullity as between the grantor and grantee, leaving the grantor to deal with the property as if he had never sold it, that intention would have been clearly manifested. If the construction placed by the plaintiff upon the constitution and statutes of Colorado be sound, there would be

some ground to say that a foreign corporation, taking a conveyance of real estate for purposes of its business in Colorado, before it had acquired the right to do business there, would have no standing in the courts of that State for the purpose of having the estate so acquired protected against trespasses upon it   *   *   *   Where a corporation is incompetent by its charter to take title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object. It is valid until assailed in a direct proceeding instituted for that purpose." To the same effect is Chattanooga Ry. Co. v. Evans, 66 Fed. Rep. 809, and many other cases cited in the authorities mentioned.

But the question here does not involve a controversy as 'to the title to property between contending claimants. The right of property is not in any manner presented by the record. It is a case between a Kentucky corporation and one of the public to whom the Kentucky corporation owed a duty that it seeks to avoid by the plea that it had disposed of the property. We think there is and should be a broad distinction between cases like this and cases in which the title to the property attempted to be conveyed is drawn in question, and that the rule laid down in the cases cited should not be extended to railway corporations. In short, in cases like this, our conclusion is that a conveyance made by a domestic railway corporation to a foreign corporation that has not complied with the laws of this State is void and of no effect in a controversy between the domestic corporation and a party to whom as such domestic corporation it owed duties. As the conveyance was void and of no effect, it did not present any defense to a cause of action that might have been maintained against it if the conveyance had not been made.

Wherefore the judgment is reversed with directions for a new trial in conformity with this opinion.