## Vaughan, Secretary of State, for the Commonwealth of Kentucky v. Nashville, Chattanooga & St. Louis Ry.

(Decided June 24, 1921.)

### Appeal from Franklin Circuit Court.

1. Corporations—Foreign Corporation—Intent.—Whether or not a foreign corporation becomes domesticated for all purposes by complying with the local regulations prescribing the method, is a question of intention to be determined from a consideration of the statutes creating the regulations, and where it appears that the intention was to confer upon the foreign corporation certain powers, privileges and authority and not to make of it a new domestic corporation a compliance with such statutes will have only the latter effect.

2. Corporations—Organization Tax.—The organization tax demanded by section 4225 of the Kentucky Statutes may be collected only from Kentucky corporations created and made so under its laws and it can not be collected from foreign carrier corporations which become domesticated under sections 765 and 841 of the statutes.

CHAS. I. DAWSON, Attorney General, for appellant.

HELM BRUCE and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The sole question involved on this appeal is whether or not a foreign railroad corporation which was incorporated in the state creating it long before the adoption of our present Constitution and which from about that time owned and operated a portion of one of its railroad lines located in this state and had also long since complied with sections 570 and 841 of our statutes entitling it to "possess, control, maintain or operate" a railroad in this state, must pay the organization tax of one-tenth of one per centum of its capital stock, as provided in section 4225 of the statutes, upon becoming naturalized, domesticated or incorporated in the manner provided by section 765 of the statutes.

The question arises in this way: The appellee and plaintiff below, Nashville, Chattanooga & St. Louis Railway, is a corporation created under the laws of the state of Tennessee about December 11, 1848. It soon thereafter constructed or became the owner of a line of railroad running from Nashville, Tennessee, to Hickman, Fulton county, Ky., with something like ten miles of railway trackage in this state. It has since acquired other lines running into different states and has been engaged since that time as an interstate carrier of passengers and freight. About 1896 it leased a line of railroad running from Paducah, Ky., via Jackson, Tennessee, to Memphis, Tennessee, and has since then operated that line as lessee thereof. In the meantime it accepted the provisions of the Constitution of this state as provided by section 570 of the statutes, and it also complied with the provisions of section 841 of same by filing in the office of the Secretary of State, at Frankfort, and in the office of the Railroad Commission of this state a duly certified copy of its charter and articles of incorporation as required by that section and thereby, as provided therein, became "a corporation, citizen and resident of this state" and it received from the Secretary of State a certificate of such incorporation. A short while before the filing of this action by it against the appellant and defendant below, Fred A. Vaughan, Secretary of State, for the Commonwealth, it concluded to become domesticated or incorporated in this state pursuant to the provisions of section 765 of the statutes, so as to enable it to own in fee simple title land in the state of Kentucky necessary for its purposes as a common carrier and to enable it to exercise the right of eminent domain so as to acquire land for that purpose, and it prepared the necessary papers and documents in the manner specified in that section, and in section 763 which is referred to therein, and offered to file them with the defendant as Secretary of State, and he declined to accept them or to file them in his office, unless plaintiff would first pay the organization tax required by section 4225, *supra,* which, since the capital stock of plaintiff was $16,000,000.00, amounted to $16,000.00. Plaintiff declined to pay that tax and filed this action against defendant in the Franklin circuit court praying that a writ of mandamus issue against him commanding him to file the executed writings presented to him and to give it an attested copy thereof to be filed in the office of the Railroad Commission, and to do so without exact-

ing or demanding of it any part of the $16,000.00 organization tax. The petition alleged in due form all the facts hereinbefore recited and filed copies of plaintiff's Tennessee charter with the papers presented to the Secretary of State. A demurrer filed to the petition was overruled and, defendant declining to answer, the court issued the mandatory writ prayed for, and to reverse that judgment he has appealed.

Before attempting a discussion of the merits of the question involved it may be stated that the regularity of the steps taken by plaintiff to become incorporated in the manner provided by section 765 is not attacked, since it is conceded by counsel for defendant that the provisions of that section, as well as the one referred to therein (763), were strictly followed.

Section 211 of the Constitution says: "No railroad corporation organized under the laws of any other state, or of the United States, and doing business, or proposing to do business, in this state, shall be entitled to the benefit of the right of eminent domain or have power to acquire the right of way or real estate for depot or other uses until it shall have become a body-corporate pursuant to and in accordance with the laws of this Commonwealth."

Section 765 of the statutes provides that: "No railroad corporation, organized or created by or under the laws of any other state, shall have the right to condemn land for, or acquire the right of way for, or purchase or hold land for its depots, tracks, or other purposes, until it shall have first filed in the office of the Secretary of State of this state, in the manner provided in the first article of this chapter, its acceptance of the Constitution of this state, and shall have become organized as a corporation under the laws of this state, which it may do by filing in the offices of the Secretary of State and the Railroad Commission articles of incorporation in the manner and form provided in section 763 of this article." And section 763, referred to therein, provides the method by which a newly created railroad corporation may be organized in this state by any number of persons, not less than seven, executing original articles of incorporation specifying and enumerating the things therein required, and proven by the affidavits of two of the named directors therein, and that such articles shall then be filed in the office of Secretary of State and in the office of the Railroad Commission, and when a certificate of the facts

shall be issued by the officers before whom the articles are required to be filed the persons executing them "shall be a body-corporate by the name specified in the articles."

Section 841 of the statutes provides how a foreign corporation may become a domestic one for the purpose of possessing, controlling, maintaining or operating a railway or any part thereof in this state, which it may do "By filing in the office of the Secretary of State, and in the office of the Railroad Commission, a copy of the charter or articles of incorporation of such company, association or corporation, authenticated by its seal and by the attestation of its president and secretary, and thereupon, and by virtue thereof, such company, association or corporation shall at once become and be a corporation, citizen and resident of this state. The Secretary of State shall issue to such corporation a certificate of such incorporation."

Section 4225 of the statutes, which is the one that provides for the collection of the organization tax demanded by the defendant, says: "Every corporation which may be incorporated by or under the laws of this state, having a capital stock divided into shares, shall pay into the state treasury one-tenth of one per centum upon the amount of capital stock which such corporation is authorized to have, and a like tax upon any subsequent increase thereof. Such tax shall be due and payable on the incorporation of the company and on the increase of the capital stock thereof, and no such corporation shall have or exercise any corporate powers until the tax shall have been paid, and upon payment it shall file a statement thereof with the Secretary of State."

Counsel for plaintiff, both in the petition and in brief filed on this appeal, take the position that (a), it was the intention of the legislature in enacting the last inserted section to demand and require the payment of the organization tax therein provided for only from corporations created in this state for the first time, and that it was not intended that such organization tax should be collected from a prior created foreign corporation, which still desired to maintain its foreign identity, when it sought to become domesticated in the manner pointed out in section 765, *supra*, in order that it may become vested with the powers set forth in section 211 of the Constitution; and that (b), if those sections are susceptible to the construction that it was the intention of the legislature

to impose the organization tax upon foreign railroad companies seeking to become domesticated in the manner pointed out, then such an intention and purpose were beyond its power to enact, and that section 4225, in so far as it provides for such a purpose, if it does do so, is unconstitutional and void as imposing an unlawful burden upon interstate commerce.

The Attorney General, in behalf of the Secretary of State, contests the correctness of both of these propositions. In support of the second one (b) counsel for plaintiff cites and relies on the case of Western Union Telegraph Co. v. Kansas, 216 U. S. 1, but the question there involved, as we interpret that opinion, was the domestication of the foreign corporation in a manner similar to that provided by section 841, *supra*, of our statutes, in order to permit it to transact business in the domesticating state. No question relating to the conferring of authority on the foreign corporation to own real property within the borders of that state, or conferring upon it power to exercise the right of eminent domain therein, was involved in that case. Whether a different rule would prevail if those questions had been involved we will not attempt to discuss or determine, since we have arrived at the conclusion that contention (a), of plaintiff's counsel is correct, which disposes of the necessity of determining the other one.

Strictly speaking there is no such thing known to the law as the creation of a single corporation by two or more states or sovereignties. 14A Corpus Juris, 1227-1230. But, while this is true, different states may and sometimes do create under their own laws corporations having the same name, the same powers, the same management, and with their principal offices in one of the creating states, but as stated in the text of the work just referred to, "the result of such legislation is in law to create a *separate* and *distinct* corporation in each state, not a single corporation in all the states, 'but two (or more) corporations of the same name having a different paternity,' each of which is, for purposes of jurisdiction, and other cases in which residence of citizenship is material, a citizen and a resident or inhabitant of the state by or under the laws of which it was created."

Whether the method provided by the domesticating state, to which the applying corporation is a foreign one, was intended to create a new corporation, or only to confer certain powers upon the foreign corporation, is a

question of intention to be gathered from the language employed in the constitutional or statutory provisions prescribing the method. Corpus Juris, *supra,* 1232, and Fletcher's Cyclopedia of Corporations, vol. 8, section 5709, pages 9304-9309. From the same sources, and from other authorities which might be cited, we learn that before such an intention will be inferred it must appear from the language employed that the purpose was to create the corporation anew and to confer upon it all the powers usually exercised by similar domestic corporations and to reserve to the state the power to exercise such authority over the corporation as is usually exercised over its originally created and wholly domestic ones. "The mere grant of privileges or powers to an existing corporation, without more does not do this, and does not make it a citizen of the state conferring such powers." Corpus Juris, *supra,* 1232, Pennsylvania R. R. Co. v. St. Louis, etc., R. R. Co., 118 U. S. 290, and numerous other cases cited in note 34 to the text.

Section 211 of the Constitution only purports to confer two rights: one to own real estate in this state and the other the power to acquire it by condemnation through the exercise of the right of eminent domain, and it is only upon foreign railroad corporations that even those two rights may be conferred by that section. Both it and section 765 of the statutes recognize the continued existence of the foreign railroad corporation after their provisions have been complied with by it. There is no intimation in either of them that after being clothed with the power and authority attempted to be conferred the creature or entity thereby becoming possessed of them has been made a new creature by being born again. The section of the Constitution withholds from such foreign corporations either of the two rights referred to "until *it* shall have become a body-corporate," etc. Logically there would no longer be a foreign corporation to which the pronoun "it" could apply if a compliance with the domesticating method extinguished the foreign corporation by creating an entirely new one under the laws of this state. Likewise section 765 of the statutes, in providing the method by which the same rights may be conferred upon a foreign railroad corporation, withholds them "until it" (not individuals proposing to form a new corporation) shall do the things prescribed in the section. Indeed, if the contention of the Secretary of State and of his counsel, the

Attorney General, be true, i. e., that it was the intention of section 211 of the Constitution and of section 765 of the statutes to create outright a new corporation in Kentucky and that none but domestically created corporations can exercise the rights proposed to be conferred by those sections, then there would have been no use for their enactment, since in that case it would have been sufficient to say, both in the Constitution and the statutes, that no railroad Corporation "shall be entitled to the benefit of the right of eminent domain or have power to acquire the right of way or real estate for depot or other purposes," unless it be one created exclusively under the laws of this state. All the references to a foreign corporation in each of the sections, and to what "it" must do, and to the powers which "it" will receive thereafter, can have no meaning unless it was the intention to recognize "it" as a continuing foreign corporation.

It must, furthermore, not be overlooked that the sections of the Constitution and of the statutes now under consideration propose only to confer upon the corporation the limited powers above referred to. They do not pretend to confer all of the corporate powers usually given to and exercised by newly created corporations. If the effect of a compliance with the sections of the Constitution and statutes under consideration is complete domestication for all purposes so as to convert the foreign corporation into a newly created Kentucky one, the result would be that the foreign corporation would become citizenized here so as to deprive it of the status of a foreign corporation and bar its right to invoke the jurisdiction of federal courts upon the ground of diverse citizenship.

In the case of Louisville, New Albany & Chicago Railway Co. v. Louisville Trust Co., 174 U. S. 552, the Supreme Court of the United States had before it facts substantially the same as we have here and it held that the foreign corporation did not extinguish its foreign identity, or lose its status as a citizen of the foreign state (Indiana), by becoming incorporated in Kentucky so as to enable it to purchase and own real estate here for railroad purposes, and to exercise in this state the right to acquire such property by condemnation under the power of eminent domain. In that case the Louisville, New Albany & Chicago Railway Company had been incorporated and organized under the

laws of the state of Indiana, and in 1880, the legislature of this state passed an act incorporating it in this state as a Kentucky corporation, which method of incorporating companies in this state, by special act of the legislature, was both legal and common at that time but has since been abolished by our present Constitution. The special act incorporating that company in this state conferred upon it, not only the powers above enumerated, but all the powers incident to a corporation and which are possessed by all other corporations created under the laws of this state. The company accepted its Kentucky charter and thereafter on a number of occasions and in a number of transactions described itself as a Kentucky corporation. It filed a suit in the Circuit Court of the United States for the District of Kentucky, the defendants in which were citizens of Kentucky. They contested the jurisdiction of the court upon the ground that the plaintiff therein was a citizen of Kentucky and could not invoke the jurisdiction of the federal court on the ground of a diversity of citizenship. The Supreme Court in rejecting that contention said: "As to the jurisdiction, it being clear that the plaintiff was first created a corporation of the state of Indiana, even if it was afterwards created a corporation of the state of Kentucky also, it was and remained, for the purposes of the jurisdiction of the courts of the United States, a citizen of Indiana, the state by which it was originally created. It could neither have brought suit as a corporation of both states against a corporation or other citizen of either state, nor could it have sued or been sued as a corporation of Kentucky, in any court of the United States. Ohio & Mississippi Railroad v. Wheeler, 1 Black 286; St. Louis & San Francisco Railway v. James 161 U. S. 545; St. Joseph Railroad v. Steele, 167 U. S. 659, 663; Barrow Steamship Co. v. Kane, 170 U. S. 100, 106." If the baptismal ceremony administered to the foreign corporation in that case did not have the effect of extinguishing it and making of it an entirely new creature, so as to destroy its foreign identity in Kentucky, it is difficult to see how the administration of our present provided ceremony would have that effect, since it goes no farther toward manifesting such an intention on the part of the legislature than did the domesticating acts in the case referred to; and manifestly the organization tax demanded of plaintiff is not required by section 4225 of the statute of any other corporations than those created

(sometimes referred to as "born") here, and those terms can have no application to a corporation which still has its former foreign existence.

This court in the case of Cincinnati, N. O. & T. P. Ry. Co. v. Commonwealth, 119 Ky. 196, held that the organization tax sought to be collected in the instant case as imposed by the section of the statutes, *supra*, could not be exacted of a foreign railroad company which had complied with the provisions of section 841, although the section says that a foreign corporation complying with its terms "shall at once become and be a corporation, citizen and resident of this state".

In the case of Plummer v. Chesapeake & Ohio Railway Co., 143 Ky. 102, there were presented to this court questions relating to the domesticating of foreign railroad corporations pursuant to the method provided by, and for the purposes contained in section 765, *supra*, of the statutes, and it was expressly held in that case that the process of domestication provided by the two sections (765 and 841) were for distinct and separate purposes, but, as said in the opinion, so we may say now, "Why this distinction was made it is not essential in the consideration of the question before us to inquire." In that opinion this court discussed the legal effect of a compliance by a foreign corporation with those two sections of the Statutes, the one making it "a corporation, citizen and resident of this state" and the other making it one "organized as a corporation under the laws of this state," and then said: "It would therefore seem that so far as our laws can affect the question, the corporation that has complied with section 841 is to the same extent a Kentucky corporation as is a foreign corporation that complies with section 765. The only difference between the two sections is in the means or method by which the foreign corporation is converted into or becomes a Kentucky corporation. . . So far as the principle involved is concerned, the requirements imposed by one section can not be distinguished from those imposed by the other."

It naturally follows that if a compliance with section 841 would not domesticate the complying corporation so as to destroy its foreign identity and to render it amenable to the payment of the organization tax, required by section 4225, *supra*, as held in the case of Cincinnati, N.

O. & T. P. Ry. Co. v. Commonwealth, *supra,* a compliance with the provisions of section 765, *supra,* would also not have that effect.

Upon the whole case we conclude that it was not the intention of the legislature in enacting section 4225 of the statutes to include therein foreign corporations seeking domestication under the provisions of section 765, and that plaintiff can not be required to pay the organization tax demanded of it by the defendant. He should have accepted and filed the papers tendered him without the payment of that tax, and the judgment appealed from, conforming to these views, is affirmed. Whole court sitting.