EATON ASPHALT PAVING COMPA-
NY, INC.; and the Morrow Grav-
el Company, Appellants,

v.

CSX TRANSPORTATION,
INC., Appellee.

No. 1997–CA–003162–MR.

Court of Appeals of Kentucky.

March 26, 1999.

Discretionary Review Denied
by Supreme Court Jan. 12, 1999.

Richard G. Meyer, Elizabeth Graham
Weber, Covington, for appellants.

John S. "Brook" Brooking, Gerald F.
Dusing, Covington, for appellee.

Before: JOHNSON, KNOX and
SCHRODER, Judges.

## OPINION

JOHNSON, Judge:

Eaton Asphalt Paving Company, Inc. (Eaton Asphalt), and Morrow Gravel Company (Morrow) (collectively, appellants) have appealed from the interlocutory order of the Kenton Circuit Court entered on December 3, 1997, authorizing the appellee, CSX Transportation, Inc. (CSX), to condemn 1.4 acres of property owned by Morrow and leased by Eaton Asphalt for the purpose of constructing a passing track. We affirm in part, reverse in part and remand with directions to dismiss the complaint.

This action was initiated by CSX on September 8, 1997, pursuant to Kentucky Revised Statutes (KRS) 416.010 and 416.540–670. In its petition, CSX alleged that it is a Virginia corporation authorized to do business in Kentucky, and that it is a railroad and is a company authorized to construct a railroad as referred to in KRS § 277.060 and KRS § 416.010 *et seq.* CSX alleged a need for the property it sought to condemn in order to construct a passing track and it also alleged that it had been unsuccessful in negotiating with the appellants for the purchase of the property. The circuit court appointed three commissioners for the purpose of determining the award to which the appellants were entitled due to the reduction in the market value of their property by reason of the taking. The commissioners determined that an award of $25,000 would be appropriate.

The appellants responded to the petition and asserted that as a Virginia corporation, CSX was not authorized to exercise rights of eminent domain. CSX moved for summary judgment on the issue of its right to condemn. The appellants moved to dismiss the petition challenging CSXs right to condemn because of the status as a foreign corporation and because CSX had allegedly failed to make a good faith effort to agree with them on a price for the property. The motions were consolidated and a hearing was conducted by the Kenton Circuit Court on November 14 and 18, 1997. This appeal has been taken from the trial court's order allowing CSX to proceed with the condemnation action.

The evidence of record bearing on the issue of CSX's status as an entity entitled to exercise the power of eminent domain is, for the most part, undisputed. While CSX is currently organized under the laws of Virginia, the railroad track at issue in Kenton County was, for over a century, owned and operated by the Louisville & Nashville Railroad Company (L & N), a Kentucky corporation. Further, it is not disputed that in 1982, the L & N merged with the Seaboard Coast Line Railroad Company and became the Seaboard System Railroad, Inc. (Seaboard). In her affidavit, Patricia J. Aftoora (Aftoora), employed by CSX in the capacity of Vice President and Corporate Secretary, stated that on the same day the two corporations merged, Seaboard received authorization to conduct business in Kentucky. Eventually, Seaboard changed its name to CSX.

The evidence of CSX's failure to negotiate with the appellants in good faith concerns its refusal to make the appellants an offer for the 55 acres the appellants own that they alleged will become landlocked as a result of the construction of a passing track. It is undisputed that when Morrow purchased this 95–acre tract in the 1970's, it was already separated by the railroad tracks. The appellants had no access to the 55 acres east of the tracks from their 40 acres on the west side, but they were able to access the eastern portion of their property after obtaining an easement from neighboring property owners. In 1992, the appellants and CSX entered into a private crossing agreement which allowed the appellants to access their property from the west portion of that property. Under the terms of this agreement, the appellants constructed the crossing over the tracks and CSX maintained the crossing at the appellants' expense of about

$700.00 per year. This agreement was terminable at the will of either party.

CSXs manager for real estate acquisitions, Jimmy Barker (Barker), testified that he performed an investigation of several factors to arrive at the value of the appellants property and additionally obtained an independent appraisal from a local appraiser. Based on his investigation of market values, he offered the appellants $15,000 per acre. However, the appellants took the position that their access to the 55 acres would be so interfered with by the number of trains parked on the passing track that they would not consider any offer which did not include either the cost to build a bridge over the tracks, (estimated to be approximately $500,000), or a sum equal to the value of the entire 55–acre tract. Barker testified that it was apparent that the parties would not be able to reach an agreement concerning damages. CSX filed the petition to condemn.

In arguing to the trial court that, as a Virginia corporation, CSX was not authorized to exercise rights of eminent domain within the Commonwealth of Kentucky, the appellants relied on § 211 of the Kentucky Constitution which reads:

No railroad corporation organized under the laws of any other state, or of the United States, and doing business, or proposing to do business, in this State, shall be entitled to the benefit of the right of eminent domain or have power to acquire the right of way or real estate for depot or other uses, until it shall have become a body corporate pursuant to and in accordance with the laws of this Commonwealth.

They also relied on this section's statutory counterpart, KRS 277.020, which provides:

(1) Except as provided in KRS 277.040, no corporation organized under the laws of any other state shall possess, control, maintain or operate any railroad or part thereof in this state, or condemn, purchase or hold land, or acquire a right of way, for depots, tracks or other railroad purposes, until it has filed with the Secretary of State a resolution adopted by its board of directors accepting the provisions of the Kentucky Constitution, as contemplated by Section 190 of the Constitution, and until, by incorporation under the laws of this state, it has become a corporation of this state.

In the order from which the appeal has been taken, the trial court agreed with the argument advanced by CSX, that it has, by virtue of the merger, succeeded to the powers of its predecessor, the L & N, and that the constitutional and statutory provisions concerning foreign corporations are not applicable to it. Specifically, the trial court determined that since CSX is the product of a merger or consolidation of a Kentucky corporation and a corporation organized under the laws of another state, it has thereby retained the status necessary to maintain this action as contemplated by § 200 of the Kentucky Constitution. This section of our Constitution reads as follows:

If any railroad, telegraph, express, or other corporation, organized under the laws of this Commonwealth, shall consolidate by sale or otherwise, with any railroad, telegraph, express or other corporation organized under the laws of any other State, the same shall not thereby become a foreign corporation, but the courts of this Commonwealth shall retain jurisdiction over that part of the corporate property within the limits of this State in all matters which may arise, as if said consolidation had not taken place.

The trial court also determined that CSX had bargained in good faith with the appellants, that the railroad needed the property for a passing track, and that it was therefore entitled to condemn the property.

■ There is no question that our Legislature has granted domestic railroad corporations the power of eminent domain. KRS 277.060(1)(c) & (e), and KRS 416.010. Such authority is also given to foreign

corporations which have become domesticated as outlined in KRS 277.020(2) as follows:

> (2) Any such corporation may, for the purposes set forth in this section, become a corporation of this state by filing in the office of the Secretary of State and in the office of the Railroad Commission a copy of its charter or articles of incorporation, authenticated by its seal and by the attestation of its president and secretary. The Secretary of State shall then issue to the corporation a certificate of incorporation.

However, CSX is now a Virginia corporation and it concedes that it has not complied with all of the conditions contained in KRS 277.020(2). Accordingly, the issue before this Court is whether a domestic railroad corporation which merges with a foreign corporation to form a foreign corporation retains its power of eminent domain.

The appellants argue that the trial court's interpretation and application of § 200 of the Constitution is contrary to the intent of its drafters who, reacting to the state's rampant economic despair, designed the Constitution to protect its citizens *from unscrupulous behavior by corporations, especially out-of-state enterprises* (emphasis in original). They insist that § 200 cannot be viewed as being written with an eye towards *granting privileges* to foreign corporations, but merely as a vehicle for protecting the individuals of Kentucky from corporations (emphasis in original). CSX, on the other hand, insists that the plain language of this constitutional provision does not support the limited interpretation urged by the appellants, but should be interpreted as conferring on it all the rights and privileges enjoyed by its domestic predecessor in addition to its obligations.

There is little case law concerning § 200 of our Constitution. However, we find support for the appellants' argument in *Prewitt v. Illinois Life Insurance Company*, 123 Ky. 36, 93 S.W. 633 (1906). In that case a foreign insurance company contracted with a domestic life insurance company whereby the former agreed to assume all the risk of the policies issued by the domestic company in exchange for the monies deposited with the State Treasurer by the domestic corporation as required by statute to protect policyholders. In the action by the foreign corporation to compel the treasurer to deliver the funds on deposit, the Insurance Commissioner, citing § 200 of the Constitution, argued that the insurer was not a foreign corporation as it had merged with a domestic corporation.[1] In holding that the foreign corporation was entitled to the funds, the Court held that § 200 had no application because there was no consolidation of the two companies by sale or otherwise. *Id.,* 93 S.W. at 635. Nevertheless, the Court explained the purpose of this section as follows:

> The purpose of [Section 200] was to prevent the domestic corporation from becoming a foreign corporation, and thus wrest from the courts of this state jurisdiction over the corporate property within the limits of the state in all matters which might arise.

*Id. Prewitt* does not remotely suggest that the purpose of § 200 was to accommodate a foreign corporation such as CSX, but instead, as the appellants contend, states that it was designed as an enforcement provision.

The only other case which mentions § 200 of the Kentucky Constitution is *City of Louisville v. Cumberland Telephone & Telegraph Company*, 224 U.S. 649, 662, 32 S.Ct. 572, 576, 56 L.Ed. 934 (1912). The issue in that case concerned the retention of franchise rights by a consolidated telephone company. The Supreme Court stated that §§ 199 and 200 evidently contemplated ... that ... there should be a

---

1. The opinion explains that while domestic insurers were required to keep funds deposited with the State Treasurer, foreign corporations were not.

transfer of that franchise, right of way or property, which alone gave value to the plant, thereby preserving the investment which had been made for purposes of private gain and public use. The case does not support CSX's contention that a transfer of property to a foreign corporation is accomplished without reference to other constitutional provisions pertaining to foreign corporations.

The appellants rely on *Plummer v. Chesapeake & Ohio Railway Company of Kentucky*, 143 Ky. 102, 136 S.W. 162 (1911), for their contention that CSX is a foreign railroad as contemplated by § 211 of the Constitution. In that case, the Court, in allowing the injured plaintiff to proceed against the domestic corporation, held that a conveyance made by a domestic railway corporation to a foreign corporation that has not complied with the laws of this state is void and of no effect in a controversy between the domestic corporation and a party to whom as such domestic corporation it owed duties. *Id.,* 136 S.W. at 168. In construing § 211, the Court stated:

> We think it clear [§ 211] should not be limited in its application to a foreign railway corporation that desires to come into this state for the purpose of constructing a line of railway. This narrow view of the meaning of this section would exclude from its operation a foreign railway corporation that purchased outright an existing domestic railway corporation. It would impose upon corporations desiring to build a line of railway and seeking to acquire under the right of eminent domain real estate or right of way for such purpose the duty of becoming incorporated under the laws of this state, and exempt from this duty a foreign corporation that acquired by purchase from another corporation all the real estate and rights of way that it needed in the conduct of its business. There seems no reason why a distinction like this should be permitted. We are unable to perceive why one corporation

> under the conditions stated should be allowed greater privileges than another. If one corporation cannot, except by observing certain requirements, acquire rights of way for the purpose of building a road and operating it, neither should another be permitted to purchase a road already built for the purpose of operating it without complying with such requirements. A construction that made a distinction like this would defeat in part the purpose of the Constitution, and create inequality and discrimination that should not exist. We are therefore of the opinion that section 211 of the Constitution applies to every foreign railway corporation that owns and operates a railway in this state, whether the railway so owned and operated was constructed by the foreign corporation or purchased by it from a domestic or other foreign corporation.

*Id.,* 136 S.W. at 165. Because *Plummer* involved a sale as opposed to a merger, CSX insists § 200 of the Constitution was not implicated in that case and, therefore, not mentioned. We are unconvinced by CSX's attempt to distinguish *Plummer* on this basis. Section 200 clearly contemplates that consolidation may occur by sale or otherwise. Thus, it is conceivable to this Court that § 200 was not mentioned in the *Plummer* decision for the reason that it was not designed to confer any privileges in the first instance, but was viewed as a purely jurisdictional provision.

 In determining the proper construction to give to the Constitution the Courts must

> look to the history of the times and the state of existing things to ascertain the intention of the framers of the Constitution and the people adopting it, and a practical interpretation will be given to the end that the plainly manifested purpose of those who created the Constitution, or its amendments, may be carried out.

*Shamburger v. Duncan,* Ky., 253 S.W.2d 388, 390–391 (1952), *citing Keck v. Man-*

*ning,* 313 Ky. 433, 231 S.W.2d 604, 607 (1950). Further, [t]he rule for the interpretation of Constitutions, as universally applied, is that the language therein is to receive its plain and ordinarily understood meaning by the generality of the people. *Dalton v. State Property and Buildings Commission,* Ky., 304 S.W.2d 342, 359 (1957), *quoting Crick v. Rash,* 190 Ky. 820, 229 S.W. 63 (1921). With these principles in mind and considering the reasoning in *Prewitt* and *Plummer, supra,* it is this Court's opinion that the framers of our Constitution did not intend to confer any benefit or privileges on a foreign corporation that had consolidated by sale or otherwise with a domestic corporation.

■ We hold that a foreign corporation which is the result of a merger with a domestic corporation is a foreign corporation for all purposes other than the limited purpose of conferring jurisdiction in the courts of this state to litigate issues concerning corporate property located in this state. Thus, we conclude that the trial court erred in its determination that § 200 entitled CSX to continue to exercise the power of eminent domain and to bring this condemnation action without having complied with § 211 and KRS 277.020. Accordingly, this matter is remanded to the Kenton Circuit Court with directions to grant the appellants motion to dismiss.

■ The appellants also argue that CSX lacked the right to condemn because it failed to negotiate with them in good faith prior to initiating the condemnation action.[2] Clearly, failure to negotiate may serve as the basis for the dismissal of a condemnation action. *Howard Realty Co. v. Paducah and I.R. Co.,* 182 Ky. 494, 206 S.W. 774 (1918). As stated in *Usher and Gardner, Inc. v. Mayfield Independent Bd. of Education,* Ky., 461 S.W.2d 560, 562–563 (1971):

The real inquiry in the cases just discussed and in this case is whether the condemnor [sic] made a reasonable effort in good faith to acquire the land by private sale at a reasonable price. The statute implicitly requires an effort to effect a contract of purchase satisfactory to the condemnor [sic]. A single take-it-or-leave-it offer of a manifestly inadequate amount could well evidence a failure to make a reasonable effort to acquire the land by contract of private sale.

The appellants do not question the reasonableness of CSX's offer for the 1.4 acres it wants to condemn. However, the appellants do contend that CSX's refusal to offer to compensate them for the loss of access to the 55 acres on the east side of the tracks does constitute a failure to negotiate in good faith.

In this regard, the appellants insist that they have an easement of necessity over the railroad right-of-way, the loss for which they must be compensated. They have cited this Court to numerous foreign cases which hold that a way of necessity is created when a railroad intersects one's property. Because the appellants had no access over the tracks to get from one part of their property to the other when they purchased it, and because the agreement entered in 1992 is terminable-at-will, CSX insists that the appellants are not entitled to be compensated for any loss in access occasioned by the construction of the passing track. The appellants counter that ways of necessity are created by an implied grant and are therefore appurtenant to land . . . .

■ It is obvious that the parties desire that this Court resolve the issue of whether or not CSX must compensate the appellants for the loss of access. However, that specific issue was not adjudicated by the trial court and it is not yet ripe for our review. The trial court assured the appellants that they would be entitled to make

---

2. This issue has become moot by our resolution of the constitutional issue. However, as we anticipate CSX will eventually undertake those measures necessary to satisfy KRS 277.020, we deem it appropriate to address the merits of the good faith issue.

any and all legal arguments they wanted on the issue of access in the damages portion of the proceeding and that they might ultimately succeed in convincing it that CSX's obligation is greater than it appears.[3] However, the trial court determined that there was nothing unreasonable, unfair or oppressive in CSX's approach to the issue so as to implicate CSX's right to file this action. Clearly, CSX was not required to accept the appellants legal arguments of the extent of its liability in order to be allowed to proceed to condemn. *See e.g. Coke v. Commonwealth, Dept. Of Finance*, Ky., 502 S.W.2d 57 (1973).

Furthermore, the commissioners' award of $25,000 was only slightly more than the sum of $21,000 ($15,000 times 1.4 acres) originally offered by CSX. Finally, as the trial court noted, it was the appellants that took the position we need the $500,000 bridge, and thereby cut off negotiations. Accordingly, we hold that the trial court's findings that CSX bargained in good faith are supported by the evidence and are not clearly erroneous. Kentucky Rules of Civil Procedure 52.01.

For the reasons stated herein, the judgment of the Kenton Circuit Court is affirmed in part, reversed in part and remanded for dismissal of the action.

All concur.

---

3. At the hearing, the trial court stated to the appellants' counsel that her clients had the next best thing to no rights at all to access to that 55 acres. It also stated that she might be able to convince it as a matter of law that the appellants had some sort of fixed easement

... [however], the reality is we're not here today to determine your rights or the commitment the law imposes on the railroad to access and were certainly not here to determine the fair market value of that access.