STATE OF NEBRASKA, EX REL. WILLIAM LEESE, AT-
TORNEY GENERAL, v. CHICAGO, BURLINGTON . &
QUINCY RAILROAD COMPANY.

1. Constitutional Law:  RAILROADS:  FOREIGN CORPORA-
TION:  CONSOLIDATION.  While section 8 of article XI. of the
constitution of this state provides that no railroad corporation,
organized under the laws of another state, or of the United
States, and doing business in this state, shall be entitled to ex-
ercise the right of eminent domain, or have power to acquire
the right of way or real estate for depot or other uses, until it
shall have become a body corporate, pursuant to, and in accord-
ance with, the laws of this state, it does not prohibit existing
railroad companies, one of which is a domestic corporation, from
becoming a body corporate by consolidation, instead of by the
formation of a new corporation, providing such consolidation is
made pursuant to the laws of this state permitting the same,
and by which it becomes "a body corporate pursuant to, and
in accordance with, the laws of this state."

2: ———: ———: ———: CASE STATED. The Chicago, Bur-
lington & Quincy Railroad Company was a corporation organ-
ized under the laws of the state of Illinois and of the state of
Iowa, and operating a railroad from the city of Chicago, in Illi-
nois, to a point on the Missouri river, in Iowa, opposite the city
of Plattsmouth, in this state, and the Burlington & Missouri
River Railroad Company in Nebraska was a corporation organ-
ized under, and by virtue of, the laws of this state, operating a
railroad from the city of Plattsmouth to Kearney. These two
corporations consolidated their stock and franchises into one
joint stock company, to be known as the Chicago, Burlington,
& Quincy Railroad Company under the provisions of section 114
of chapter 16 of the Compiled Statutes of 1887. It was *Held*,

That by virtue of such consolidation, and the compliance with the laws of this state, that the corporation created thereby became a body corporate, pursuant to, and in accordance with, the laws of this state, and was, therefore, not a foreign corporation.

QUO WARRANTO.

*William Leese, Attorney General,* and *J. M. Stewart,* for relator.

*Dexter, Herrick & Allen* and *Marquett & Deweese,* for respondents.

REESE, CH. J.

This is an information in the nature of a *quo warranto,* instituted by the attorney general against the defendant.

The allegations of the information are, in substance, that the defendant is a railroad corporation organized and existing under the laws of the state of Illinois, and is not incorporated under the laws of this state, and is, therefore, a foreign corporation; that it has been, and is now, unlawfully exercising the right of eminent domain, by purchasing real estate for depot and other uses, as well as by obtaining the same by condemnation proceedings for the purposes of right of way for its railroad, and that it is now, and has been for some time past, unlawfully usurping the rights, privileges, and franchises of a domestic corporation, without having become one, under the laws of this state.

To this information the defendant filed its answer, which consists of an extended history of the defendant from the time of its incorporation in the state of Illinois to the present time, and which need not be noticed further than that the Chicago, Burlington & Quincy Railroad Company, as originally organized, constructed its railroad from the city of Chicago to the city of Burlington, Iowa; that the Burlington & Missouri River Railroad Company was duly in-

corporated under the laws of the state of Iowa, and that it constructed a line of road from said city of Burlington to a point on the Missouri river opposite the city of Plattsmouth, in this state; that the lines of road were so constructed as to form a continuous line, and were connected for that purpose at the city of Burlington; that these two corporations, acting under the laws of the state of Illinois and of the state of Iowa, consolidated their franchises and interests, so as to become one corporation or joint stock company, by the name of the Chicago, Burlington & Quincy Railroad Company; that in the year 1869, articles of incorporation were filed in the office of the secretary of state of Nebraska, duly incorporating the Burlington & Missouri River Railroad Company in Nebraska, the object and purpose of which, as set forth in its articles of incorporation, was to construct and operate a line of road, of uniform gauge with the other railroads, from Plattsmouth to Kearney; that said company constructed its railroad in accordance with the purpose of its incorporation, and by which a continuous line of traffic could be maintained from Kearney, Nebraska, to the city of Chicago, Illinois.

The only other feature of the answer which it is deemed necessary to notice is, that on and prior to the first day of January, 1880, the railroad of the Chicago, Burlington & Quincy Railroad Company in Iowa, and the railroad of the Burlington & Missouri River Railroad Company in Nebraska, being connected at the boundary line between the states of Iowa and Nebraska, at the city of Plattsmouth, in accordance with the laws of the states of Iowa and Nebraska, and in pursuance of a vote of more than three-fourths of all the stockholders of the respective companies, entered into certain articles of consolidation, whereby the parties thereto merged and consolidated the stock of the respective companies, making one joint stock company of said corporations, by the name of the Chicago, Burlington & Quincy Railroad Company; that by force of said articles of con-

solidation, and the laws of Nebraska, the said Chicago, Burlington & Quincy Railroad Company, when organized, became an incorporation of Nebraska, pursuant to, and in accordance with, the laws of the state, and by virtue of such consolidation and compliance with the laws of this state, became a domestic corporation, with all the rights, franchises, and privileges of any other domestic corporation, including the power to exercise the right of eminent domain. It therefore denies that it is unlawfully usurping any of the rights which it is now exercising, but insists that by the consolidation referred to, the method of which is set out at length in the answer, it became and is a domestic corporation, and is not a foreign corporation as alleged in the information.

It is not deemed necessary to set out in detail the method of consolidation which is presented and set up in the answer, further than to say that it appears to have been in compliance with the requirements of the laws of this state, and especially of section 114 of chapter 16 of the Compiled Statutes of 1887.

This section we here copy: "Every railroad company organized under the laws of this state shall have power to intersect, join and unite its railroad or railroads with any railroad or railroads constructed or to be constructed in this state or in any adjoining state or territory, by any railroad company organized under the laws of any state or territory, at such point on the boundary line of this state and such adjoining state or territory or at such other point as may be mutually agreed upon between said companies, and all such railroad companies whose railroads are or may be connected at the boundary line of this state or at such other agreed point by bridge, transfer, ferry or otherwise as to form practically a continuous line of railway over which cars may pass, are authorized to consolidate the stock of the respective companies, making one joint stock company thereof, and bring the railroads

thus connected under one management upon such terms as may be mutually agreed; *Provided,* No railroad company shall consolidate its stock, property, franchises or earnings in whole or in part with any other railroad corporation owning or operating a parallel or competing line in this state. Articles stating the terms of such consolidation shall be approved by each company by a vote of the stockholders owning a majority of the stock in person or by proxy at either a regular annual meeting thereof, or at a special meeting called for that purpose by a notice of at least sixty days, stating the object of such meeting, to be addressed to each of such stockholders when their place of residence is known, and deposited in the post-office and published for at least three successive weeks in one newspaper in at least one of the cities or towns in which each of said corporations has its principal business office, or by the consent in writing of such majority annexed to such articles and copies of said articles and of the records of such approval or of such consent, and accompanied by lists of the stockholders of such corporation, and the number of shares held by each, duly certified to by the respective presidents and secretaries with the respective corporate seals affixed, shall be filed for record in the office of the secretary of state of this state before any such consolidation shall have any validity or effect. Upon filing for record in the office of the secretary of state of the copies of said articles of such consolidation, and of such record of approval or consent the companies so consolidating shall become one corporation, and the said consolidating corporations shall become merged in the new corporation provided for in said articles, and shall be known thereafter by the corporate name therein adopted, and shall within this state possess all the powers, franchises and immunities, including the right of further consolidation with other corporations under this section, and be subject to the same liabilities and restrictions imposed by the laws of this state upon other railroad com-

panies, and shall in addition possess such powers, franchises and immunities, and be liable to such special restrictions and liabilities, as the said consolidated corporations were within this state possessed of or subject to under any laws of this state peculiarly applicable to them or either of them at the time of such consolidation."

Upon the filing of this answer, the cause was argued and submitted upon the pleadings; counsel for defendant insisting that by virtue of the consolidation set out in the answer, which was admitted by the attorney general, the defendant became a domestic corporation. The attorney general contended against this conclusion. The case is decided upon the pleadings alone.

The question presented is not whether defendant has complied with the laws of this state. If that is admitted, the question still is, whether or not such compliance has rendered it a domestic corporation within section 8 of article XI. of the constitution, which provides that "no railroad corporation organized under the laws of any other state, or of the United States, and doing business in this state, shall be entitled to exercise the right of eminent domain, or have the power to acquire the right of way, or real estate for depot or other uses, until it shall have become a body corporate pursuant to and in accordance with the laws of this state."

It will be noticed that by section 114, above quoted, it is provided that, upon the filing for record in the office of the secretary of state of copies of the articles of consolidation, with the consent or approval of the companies so consolidating, they shall become one corporation, which shall be known by the name adopted, and shall possess the powers, franchises, and immunities, and be subject to the liabilities and restrictions imposed by the laws of this state upon other railroad companies, and as the consolidating corporations within this state were possessed of, subject to and under the laws of this state at the time of

11

such consolidation. This section, in effect, provides that where a domestic corporation, that is one organized under the laws of this state and having its existence solely within this state, becomes consolidated with a corporation originally erected in another state, that the new corporation is entitled to exercise the same rights and is subject to the same restrictions and liabilities as the original corporation, in this state, before the consolidation. These rights and privileges consist in the exercise of the right of eminent domain, of acquiring property by purchase, for the use of the corporation, and of enjoying such other rights and privileges as properly belong to corporations. The restrictions and liabilities are, that it shall be subject to the laws of this state and its jurisdiction in the execution of their authority; that it shall not have the peculiar privileges which are granted to foreign persons or corporations in the way of removal of its suits from the state to the Federal courts; and that in the exercise of all its corporate functions it must be governed by, and be subject to, the laws of this state. It was evidently the purpose of the legislature, in the enactment of the law under consideration, that, by complying with its provisions, the corporation so complying should be a domestic, and not a foreign corporation. This being true, it seems to us quite clear that such a consolidation, when effected, would bring the consolidated company not only within the spirit but within the letter of the law and of the constitution. Morawetz on Corporations, Sec. 939, *et seq.* By the section of the law above quoted, such a consolidated corporation would not be a corporation "organized under the laws of another state or of the United States." And while not originally incorporated within this state, in the manner in which new corporations are formed, yet "it would become a body corporate pursuant to and in accordance with, the laws of this state" as specified in the constitution, and in a legal sense distinct from the corporation in the other states

through which the road runs—in fact a domestic corporation. The legislature, therefore, by the act provided a method other than that of forming a new corporation, by which corporations in existence, one of which is a domestic corporation, might become such body corporate under the laws of the state.

It is alleged in the answer that this consolidated corporation was created about the 1st day of January, 1880; that since that date it has been, in law and in fact, a domestic corporation, and not a corporation " organized under the laws of another state or of the United States."

Upon an examination of the allegations and averments of the answer, in connection with the section of the statute above referred to, as well as that of the constitution, we are convinced that by the action of the companies as set out in the answer, the defendant became and now is a " body corporate pursuant to, and in accordance with, the laws of this state," and is entitled to exercise the rights and privileges of such corporation, and is subject also to all the limitations and liabilities imposed upon domestic corporations, and that it is not a "corporation organized and existing under the laws of the state of Illinois," as alleged in the information, nor of any other foreign state.

It was stated by counsel for the defendant, upon the argument of the cause, that the view entertained by them at that time had not been entertained by them during the whole of the time which has elapsed since the 1st day of January, 1880, and that, acting upon a different opinion, they had sought to and had removed causes from the courts of this state to the United States circuit court, as a foreign corporation, but that in the early part of the year 1888 they had become convinced that they were not entitled to do so, and since that time had acted in all respects as a domestic corporation subject to the laws of this state.

The attorney general being desirous only of having the status of the defendant company ascertained and declared,

agreed with the counsel representing it, upon a judgment to be entered in case the court found upon the facts presented that the defendant was not unlawfully usurping the rights, privileges, and franchises as alleged in the information. Judgment will, therefore, be entered in accordance with this opinion.

JUDGMENT ACCORDINGLY.

·THE other judges concur.