GEORGE H. ROGERS ET AL., APPELLANTS, V. P. JAMES COSGRAVE ET AL., APPELLEES.

FILED JUNE 18, 1915. No. 18111.

1. **Eminent Domain:** GRANT OF RIGHT. Eminent domain is a sovereign power. It belongs to the state, and the state can authorize such corporations as it sees fit to exercise the right in the public interest.

2. ———: ———. The fact that a corporation derives its charter from another state, and so is a citizen of that state within the federal statute authorizing the removal of causes to the federal courts for diverse citizenship, does not prevent it from complying with our statute so as to become a domestic corporation with right of eminent domain.

3. ———: DAMAGES: FAILURE TO AGREE: EVIDENCE. The statute (Rev. St. 1913, sec. 5945) provides that "the damages to be paid by such corporation * * * when not agreed upon, shall be ascertained" by condemnation. If the evidence shows that there have been negotiations for purchasing of the land between the parties which have failed because of certain disagreements, it shows sufficiently that the parties cannot agree.

4. ———: ———: ———: OWNERS IN COMMON. If one of two owners in common of the land fails to agree to sell the same, it is unnecessary to negotiate with the other. It will not be presumed that the company could make satisfactory use of an undivided interest.

Rogers v. Cosgrave.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Hall & Bishop* and *George H. Rogers,* for appellants.

*Byron Clark, Jesse L. Root, Strode & Beghtol* and *J. W. Weingarten, contra.*

SEDGWICK, J.

The defendant, the Chicago, Burlington & Quincy Railroad Company, made application to the county court of Lancaster county to condemn certain lands owned, as alleged, by George H. Rogers, Isabella Rogers, and Anna Rogers. Thereupon, George H. Rogers and Anna Rogers began this action in the district court for that county against the then county judge, P. James Cosgrave, and commissioners who had been appointed to appraise the lands in question, to restrain further condemnation proceedings. Afterwards the said Anna Rogers died, and George H. Rogers, as executor of her will, was substituted in her place as plaintiff, also the railway company became a party to the proceedings. A temporary injunction was allowed, and upon trial the court found generally for the defendants, and plaintiffs have appealed.

1. It is contended that the railroad company is a foreign corporation, and therefore does not have the right of eminent domain in this state. In *State v. Chicago, B. & Q. R. Co.,* 25 Neb. 156, it was decided that, "by virtue of such consolidation, and the compliance with the laws of this state, the corporation created thereby became a body corporate, pursuant to, and in accordance with, the laws of this state, and was, therefore, not a foreign corporation." The opinion recites the facts of the consolidation, which was effected in 1880, and quotes the statute of 1881 (Laws 1881, ch. 66), which is now Rev. St. 1913, sec. 5963, and held that the consolidation was a compliance with this statute. It then discusses the question whether the compliance with the statute will make it a domestic corporation having the right of eminent domain, and says: "It

98 Neb. 39

was evidently the purpose of the legislature, in the enactment of the law under consideration, that, by complying with its provisions, the corporation so complying should be a domestic, and not a foreign corporation. This being true, it seems to us quite clear that such a consolidation, when effected, would bring the consolidated company, not only within the spirit, but within the letter, of the law and of the constitution. * * * 'And while not originally incorporated within this state, in the manner in which new corporations are formed, yet 'it would become a body corporate, pursuant to, and in accordance with, the laws of this state.' " Another case was also then decided holding the same view. *State v. Missouri P. R. Co.*, 25 Neb. 164.

The plaintiff argues that, as the statute authorizing such consolidation and conferring the right of eminent domain upon filing the articles of consolidation with the secretary of state was enacted after the consolidation in question took place, such consolidation was not a compliance with the statute. But we cannot presume that this court was ignorant of the time the statute was enacted, and that the court would have decided that the fact that the defendant company had done all of those things required by the act would not entitle it to the benefits of the act because they had already been done when the statute was enacted, especially as this court reached the same conclusion about ten years after the statute was enacted, and quoted *State v. Chicago, B. & Q. R. Co., supra*, as authority for that holding without criticising and without suggesting that the fact that the statute was enacted after the consolidation was worthy of consideration. *Trester v. Missouri P. R. Co.*, 33 Neb. 171. The writer of the opinion in the former case expressed the idea that becoming a domestic corporation under our statute would constitute the defendant a citizen of this state so that it could not remove litigation to the federal courts on the ground of diverse citizenship, but this was not necessary to a determination of the case, and in the latter case the court expressly reserved any opinion on that question. Afterwards the question was decided by the supreme court of the

United States in *St. Louis & S. F. R. Co. v. James,* 161 U. S. 545. The court said.: "It must be regarded, to begin with, as finally settled, by repeated decisions of this court, that, for the purpose of jurisdiction in the federal courts, a state corporation is deemed to be indisputably composed of citizens of such state." The opinion then quotes many former decisions of that court to the same effect. It quotes from *Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co.,* 118 U. S. 290: "The mere grant of privileges or powers to it as an existing corporation, without more, does not do this, and does not make it a citizen of the state conferring such powers." The court then in discussing the matter says: "But whatever may be the effect of such legislation, in the way of subjecting foreign railroad companies to control and regulation by the local laws of Arkansas, we cannot concede that it availed to create an Arkansas corporation out of a foreign corporation in such a sense as to make it a citizen of Arkansas within the meaning of the federal constitution so as to subject it as such to a suit by a citizen of the state of its origin. In order to bring such an artificial body as a corporation within the spirit and letter of that constitution, as construed by the decisions of this court, it would be necessary to create it out of natural persons, whose citizenship of the state creating it could be imputed to the corporation itself. But it is not pretended in the present case that natural persons, resident in and citizens of Arkansas, were by the legislation in question created a corporation, and that therefore the citizenship of the individual corporators is imputable to the corporation."

Eminent domain is a sovereign power. It belongs to the state, and the state can authorize such persons as it sees fit to exercise the right in the public interest. It is not necessary that a railroad corporation shall be the creature of the state in the sense that its stockholders must be residents in order to enable the state to confer upon it the right of eminent domain. Under the federal statute the stockholders of a corporation are conclusively presumed to be residents of the state from which the corporate ex-

istence is derived, and the corporation is a citizen of that state for the purpose of construing the law giving jurisdiction to the federal courts on the ground of diverse citizenship. But, under the state statute allowing a railroad corporation of another state having connected lines in this state to improve its lines and exercise the right of eminent domain in this state, the residence of its stockholders and the origin of its charter are alike immaterial. Under our statute and the early decisions, this defendant has exercised the right of eminent domain for many years, and the question must be regarded as settled.

2. The plaintiff contends that condemnation proceedings cannot be maintained in this case because it does not appear that the parties cannot agree upon the purchase of the land by the defendant company. The statute provides: "The damages to be paid by such corporation for any real estate taken as aforesaid, when not agreed upon, shall be ascertained and determined by commissioners to be appointed by the county judge." Rev. St. 1913, sec. 5945. "If the owner of any real estate, over which such railroad corporation may desire to locate its road, shall refuse to grant the right of way through his or her premises, the county judge of the county * * * shall, upon the application of either party, direct the sheriff of said county to summon six disinterested freeholders of the county," etc. Section 5946.

The supreme court of Washington appears to hold that no attempt to purchase is necessary when the owners deny and contest the company's right to take the land. *State v. Superior Court*, 48 Wash. 277. Moreover, the records show that there were negotiations between the defendant and George H. Rogers, and that these negotiations failed. If the company could not obtain his interest, it would be useless to try to negotiate with his sister, as the company could not use an undivided half interest in the land.

The objection that the defendant is not attempting to condemn this land for its own use or for any necessary use of the defendant is without merit. Condemnation is authorized by the statute of "so much real estate as may

be necessary for the location, construction and convenient use of its road." Rev. St. 1913, sec. 5940.

There is no allegation in the petition that the proceedings are fraudulent, or not in good faith. The allegation that the defendant does not intend to use the land exclusively, but intends to allow other railroads and corporations and individuals to share in its use, does not state a sufficient reason to deny the application. The condemnation is for the use of the public, and the public generally will share in its use. There is no direct allegation that this land is for the use of some corporation or person who is not entitled to condemn land for public use, and the evidence would not support such allegations.

We have not found any error in the record requiring a reversal, and the judgment of the district court is

AFFIRMED.

HAMER, J., not sitting.