THE OMAHA NATIONAL BANK, EXECUTOR OF THE ESTATE OF JAMES ROBERT CAIN, DECEASED, APPELLEE, v. CARL W. JENSEN, TREASURER OF DOUGLAS COUNTY, NEBRASKA, APPELLANT.

58 N. W. 2d 582

Filed May 15, 1953. No. 33297.

*Clarence S. Beck,* Attorney General, *Bert L. Overcash,* and *Eugene F. Fitzgerald,* for appellant.

*Flansburg & Flansburg* and *Wells, Martin & Lane,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action in equity to enjoin the collection of a tax on intangibles. The intangibles are stocks in domesticated foreign corporations, held by plaintiff as executor.

The action presents the question as to whether the stocks are to be valued for taxation under the provisions of section 77-706, R. R. S. 1943, relating to stocks "of corporations organized under the laws of this state" or under the provisions of section 77-722, R. R. S. 1943, relating to shares of stock of a "foreign corporation." The trial court enjoined the collection of the tax and ordered cancellation. Defendant appeals. We reverse the judgment of the trial court and remand with directions.

The plaintiff as the executor of an estate is the holder of the stocks that were assessed. The defendant is the county treasurer.

The stocks involved are those of four corporations, organized under the laws of Delaware, domesticated under the provisions of section 24-222, Comp. St. 1929, which as amended is section 21-1,150, R. S. 1943. The domestication occurred between January 13, 1930, and March 22, 1941. The tax involved was levied for the year 1951. The parties stipulated as to the testimony of witnesses. No witnesses were called. There is no particular dispute as to the testimony so stipulated.

Accordingly, we treat the stipulation as a stipulation of the facts so recited.

Plaintiff contends here that by domestication the corporations became corporations organized under the laws of this state. Defendant contends that for the purpose of the taxing statutes involved the corporations are foreign corporations. Plaintiff further contends that there has been a long-standing administrative and legislative construction of the statutes that sustains its position. Defendant contends that the statutes involved are clear and require no extrinsic aids to construction.

Section 77-706, R. R. S. 1943, provides: "The value of the shares of stock of corporations organized under the laws of this state shall be determined for the purpose of taxation by deducting from the actual value of the paid-up capital stock, surplus and undivided profits of such corporation available for stock dividends, the assessed value of the property of the corporation, both intangible and tangible, listed and taxed in this state and the actual value of the property of the corporation outside of this state. The corporation shall furnish the county assessor or State Tax Commissioner such proof of the value of its property outside of the state as they may require. The corporation shall pay the tax assessed upon its stock or shares, and shall have a lien thereon for the tax paid."

Section 77-722, R. R. S. 1943, provides: "If any foreign corporation is taxed in this state upon any tangible or intangible property, then the value of its gross shares of stock shall be ascertained by deducting from the actual value of the foreign corporation's paid-up capital stock, surplus and undivided profits, the assessed value of its property taxed in this state; and thereafter the taxing officials of counties in which shares of stock of any such foreign corporation may be owned, shall determine, in relation to such net value of the gross shares of stock, the value for assessment and taxation pur-

poses of any such individual shares of stock in the hands of the resident owners."

The valuation must be upon the stock either as stock "of corporations organized under the laws of this state" or as stock of a "foreign corporation." There is no other classification so far as the tax here involved is concerned.

The term organize is defined as follows: " 'Organize,' or 'organization,' as used in reference to corporations, has a well understood meaning, which is the election of officers, providing for the subscription and payment of the capital stock, the adoption of by-laws, and such other steps as are necessary to endow the legal entity with the capacity to transact the legitimate business for which it was created." 18 C. J. S., Corporations, § 63, p. 448. See, also, 13 Am. Jur., Corporations, § 42, p. 190. We seem to have considered organization of a corporation in this sense in Abbott v. Omaha Smelting & R. Co., 4 Neb. 416, and in Capps v. Hastings Prospecting Co., 40 Neb. 470, 58 N. W. 956, 42 Am. S. R. 677, 24 L. R. A. 259.

A foreign corporation is defined as: "Generally speaking, a corporation as either foreign or domestic is determined by the place of its origin, without reference to the residence of its stockholders or incorporators, or the place where its business is transacted." 20 C. J. S., Corporations, § 1784, p. 10. See, also, 23 Am. Jur., Foreign Corporations, § 3, p. 18.

Plaintiff contends that the corporations, whose stocks are involved here, meet the test of "corporations organized under the laws of this state" because of their compliance with the domestication statute.

The domestication statute was originally passed in 1889. See Laws 1889, c. 42, p. 407. Its title was "AN ACT to enable foreign corporations to become domestic corporations of this state." It consisted of one principal section as follows: "That any corporation organized under the laws of any other state or states, territory or

territories, which has filed, or may hereafter file with the secretary of state of this state a true copy of its charter or articles of association, shall on filing with the secretary of state a certified copy of a resolution adopted by its board of directors, accepting the provisions of this act, be and become a body corporate of this state."

It provided that the corporation "accepting the provisions of this act, be and become a body corporate of this state." The Legislature did not undertake to define the powers conferred or duties assumed by domestication. By a second section it repealed "All acts or parts of acts inconsistent" with it without reference to any such acts. It declared that an emergency existed and that the act should be in effect from and after its passage. What did the Legislature mean by "body corporate of this state"? We are asked to refer to this title as an aid to determine the legislative intent. The rule is: "In case of doubt as to the meaning of a statute, resort may be had to the title as an aid to discover the legislative intent, but by no means to enlarge the scope of the statute so as to include a subject not fairly expressed in the body of the act." State ex rel. Marrow v. City of Lincoln, 101 Neb. 57, 162 N. W. 138.

The act itself suggests no answer to the meaning of either "domestic" corporations or "body corporate."

The rule is: "The court takes judicial notice of the contents of the journals of the houses of the legislature." Day v. Walker, 124 Neb. 500, 247 N. W. 350. See, also, Elmen v. State Board of Equalization and Assessment, 120 Neb. 141, 231 N. W. 772; Moeller, McPherrin & Judd v. Smith, 127 Neb. 424, 255 N. W. 551.

The Nebraska House Journal of 1889 shows that the act was introduced as a bill on March 13, 1889 (p. 1545), and passed the House on March 15, 1889 (p. 1629). It was passed by the Senate and returned to the House on March 18, 1889 (p. 1670), and was approved and signed by the Governor on March 19, 1889 (p. 1684). The House

Journal contains one suggestion as to the purpose of the bill. A member voting no offered the following explanation of his vote: "Existing law relative to the incorporation of railroads in this state having been well settled by the decision of the supreme court and this bill being an original measure, yet repealing all acts and parts of acts inconsistent therewith, I regard this bill dangerous in its effects, unwise legislation, and I vote, no." Nebraska House Journal 1889, p. 1630.

The Constitution then provided as it does now: "No railroad corporation organized under the laws of any other state, or of the United States and doing business in this State shall be entitled to exercise the right of eminent domain or have power to acquire the right of way, or real estate for depot or other uses, until it shall have become a body corporate pursuant to and in accordance with the laws of this state." Art. X, § 8, Constitution.

State v. Scott, 22 Neb. 628, 36 N. W. 121, was decided in 1888. We there applied the Constitution to a railroad corporation "organized under the laws of any other state" saying: "Our laws are liberal in promoting the organization of railroad companies and the construction of railways in the state. But such corporations must be under our own laws—the creature of our statutes and not of the laws of other states." Trester v. Missouri P. Ry. Co., 23 Neb. 242, 36 N. W. 502, was decided also in 1888. It involved, as did the Scott case, an attempt of a foreign railroad corporation to exercise the right of eminent domain. We there held: "There is no provision of the constitution, nor any statutory enactment thereunder, authorizing corporations, other than those created under the laws of this state, to exercise the right of eminent domain, or to acquire real estate for the purpose of right of way." We followed the Scott case and said: "If defendant desired to exercise the right of eminent domain, it could do it in one way only, and that would be by

becoming 'a body corporate pursuant to and in accordance with the laws of this state.' "

State v. Chicago, B. & Q. R. R. Co., 25 Neb. 156, 41 N. W. 125, 2 L. R. A. 564, was decided also in 1888. That case involved the power of a railroad corporation to exercise the right of eminent domain. There a foreign corporation had consolidated with a domestic corporation "that is one organized under the laws of this state." At that time the statute, set out in the opinion, authorized such a consolidation, although it appears that the consolidation occurred prior to the enactment of the statute. See Rogers v. Cosgrave, 98 Neb. 608, 153 N. W. 569. The effect of that opinion is that such a consolidated corporation was a domestic corporation and as such a "body corporate" within the meaning of the constitutional provisions. It did not hold that all "bodies corporate" were corporations organized under the laws of this state.

In Vaughan v. Nashville, C. & St. L. Ry., 192 Ky. 137, 232 S. W. 411, 18 A. L. R. 124, the Supreme Court of Kentucky had before it a claim of a domesticated railroad corporation that it was not required to pay an organization tax levied against every corporation which may be incorporated under the laws of the state. There the constitutional provision is quite similar to ours and contained the language "until it shall have become a body-corporate pursuant to and in accord with the laws of this Commonwealth." There the domestication statute applied to foreign railroads which could become organized as a corporation under the laws of that state and which "it" may do by filing articles of incorporation in certain state offices. Ours requires the filing of a true copy of "its" charter or articles of association. The court then held: "All the references to a foreign corporation in each of the sections, and to what 'it' must do, and to the powers which 'it' will receive thereafter, can have no meaning unless it was the intention to recognize 'it' as a continuing foreign corporation. It must, further-

more, not be overlooked that the section of the Constitution and of the statutes now under consideration propose only to confer upon the corporation the limited powers above referred to. They do not pretend to confer all of the corporate powers usually given to and exercised by newly created corporations."

Williams v. Continental Const. Corp., 168 Okl. 510, 34 P. 2d 254, presented the contention of a foreign corporation, licensed to do business in that state, that it had the power of eminent domain. The constitutional provision is substantially like ours including the language "until it shall have become a body corporate pursuant to or (ours is "and") in accordance with the laws of this state." The court held: "* * * inasmuch as the corporation had complied with every provision of the Constitution and statutes relating to foreign corporations, we are of the opinion that plaintiff corporation thereby became a body corporate pursuant to and in accordance with the laws of this state, * * *."

The above decisions clearly hold that a domesticated foreign corporation, although becoming a body corporate in the state of domestication, nevertheless remains a foreign corporation as distinguished from a corporation organized under the laws of the state of domestication. The Legislature in the domestication act used the constitutional language "become a body corporate" and did not use the language "organized under the laws of this state."

The plaintiff calls our attention to the constitutional provision and State v. Chicago, B. & Q. R. R. Co., *supra*, and the consolidation statute therein set out, and argues that the intent of the domestication act was to extend the rights of consolidated railroad corporations to corporations generally. Had that been the purpose the obvious approach would have been to enact a general statute along the lines of the consolidation statute.

The above analysis of the act leads to the conclusion that an immediate purpose of the domestication act was

to make it easier for a foreign railroad corporation to meet the constitutional requirements as to the power of eminent domain and other powers named in that provision. Whether or not it did or could have accomplished that purpose does not appear to have been tested. We are not here required to determine that question.

It is common knowledge that the domestication act has not been so limited to foreign railroad corporations in its application but rather has been recognized as a provision applicable to foreign corporations generally.

In the 1913 revision the word "That," being the first word of the first sentence of the 1889 act, was omitted and the word "act" was changed to "article." § 586, Rev. St. 1913. It so appears in section 24-222, Comp. St. 1929, and was the provision under which the corporations domesticated whose stocks are here involved. We do not deem the 1913 revision change material here, for the statute clearly continues the legislative recognition that the domesticated corporation is a foreign corporation.

In 1941 the Legislature adopted the general corporation laws of the state. Laws 1941, c. 41, p. 158. In that act it repealed section 24-222, Comp. St. 1929, and adopted in the act new provisions which are now sections 21-1,150, 21-1,151, and 21-1,152, R. S. 1943. Although these provisions were adopted subsequent to the domestication of the corporations whose stocks are involved here, plaintiff states that these amendments became applicable to these corporations after the passage of the 1941 act.

Section 24-222, Comp. St. 1929, became, as amended, section 21-1,150, R. S. 1943. There were certain language changes not material here. The new section changed the "accepting the provisions of this article" to "accepting and agreeing to be bound by the provisions of this act with respect to its property and business operations within the state of Nebraska." This is a clear legislative recognition of the prior status of the domesti-

cated corporations as a foreign corporation and a recognition of the continuation of that status. It is a more definite statement of the obligations that the foreign corporation assumes by domestication.

Section 21-1,151, R. S. 1943, provides: "Any foreign corporation which has so domesticated, may cease to be a domesticated corporation by filing with the Secretary of State a certified copy of a resolution adopted by its board of directors, renouncing its domestication and withdrawing its acceptance and agreement aforesaid." This appears to be a new provision. It gives a "foreign corporation" which has domesticated in this state the right to withdraw and resume its status, so far as this state is concerned, as a foreign corporation not domesticated here. It recognizes the foreign corporation, as such, having rights by reason of domestication, which it may renounce. It obviously would have no application to a corporation organized under the laws of this state.

Section 21-1,152, R. S. 1943, provides: "If a foreign corporation which has domesticated under the provisions of section 21-1,150 surrenders its foreign corporate charter, and files, records and publishes notice of amended articles of incorporation in the manner, time and places required by sections 21-105, 21-106, 21-109, 21-148 and 21-1,147, such corporation shall thereupon become and be a domestic corporation organized under this act."

Section 21-101, R. S. 1943, defines "domestic corporation," as used in the act to mean "a corporation organized under the laws of this state" and "foreign corporation" to include "every corporation not organized under the laws of this state." Reading section 21-1,152, R. S. 1943, in the light of these definitions, it provides that a domesticated foreign corporation, by compliance with certain provisions which includes surrendering "its foreign corporate charter," may become a corporation organized under the laws of this state. Here again is a clear legislative recognition of the fact that a domesti-

cated foreign corporation remains a foreign corporation with a domesticated status in Nebraska.

The Legislature here used the identical language of section 77-706, R. R. S. 1943, to wit—"organized under the laws of this state." There is no contention that the corporations whose stocks are here involved have complied or attempted to comply with the provisions of section 21-1,152, R. S. 1943, so as to become such domestic corporations. Consistent with this analysis of the statute is In re Estate of Sautter, 142 Neb. 42, 5 N. W. 2d 263. We there held: "A foreign corporation which complies with section 24-222, Comp. St. 1929, thereby becomes a body corporate of this state, and, while such corporation may become a domestic corporation in many respects and treated as such for local purposes, in other respects it retains the character of a foreign corporation, and its status within the state is not equivalent to that which it would have had, were the same created a separate corporation therein.

"* * * By such domestication, it does not become a domestic corporation, with the same legal rights, powers and advantages in all respects as a domestic corporation."

In In re Estate of Halstead, 154 Neb. 31, 46 N. W. 2d 779, we cited the Sautter case and pointed out that the devisees and legatees therein named were all "foreign corporations * * * as distinguished from Nebraska corporations." The 1941 amendments do not change the above construction given in the Sautter case. They do not change the clear legislative intent evident from the beginning of the 1889 domestication act that a domesticated foreign corporation remains a foreign corporation. They merely supplement existing provisions so as to meet the requirements of the extensive use of corporations in the conduct of business in the state. The conclusion is inescapable that based on these acts the stocks here involved are to be valued for the purpose of taxation under the provisions of section 77-722, R. R. S. 1943, and not section 77-706, R. R. S. 1943.

Plaintiff, however, contends that there exists within the taxing statutes themselves a demonstrated legislative intent and determination that negatives the above conclusion.

The intangible tax act was passed in 1921. Laws 1921, c. 133, art. VIII, § 1, p. 582. It provided for the listing and taxation of corporate shares of stock and contained a proviso, which as amended is now section 77-706, R. R. S. 1943, providing a method for determining the value of shares of stock of corporations organized under the laws of this state, and that "such" corporations should pay the tax assessed upon its stock or shares.

The 1921 act also contained a provision requiring certain corporations organized under the laws of any other state to file with the Tax Commissioner the names and addresses of Nebraska residents who owned any of its stocks. Laws 1921, c. 133, art. VIII, § 3, p. 584. The 1925 Legislature amended that provision. Laws 1925, c. 173, p. 454. The title of the amending act is: "AN ACT to amend Section 5886, Compiled Statutes of Nebraska for 1922, relating to revenue; providing for the filing of statements by foreign corporations with the tax commissioner; defining the method of ascertaining the value of stock of such corporations for purposes of assessment and taxation; to repeal said original section; and to declare an emergency." The body of the act is: "Every corporation organized under the laws of any other state or country transacting business in Nebraska or offering for sale in Nebraska any of its securities, *and not having complied with the requirements of the laws of Nebraska providing for the domestication of foreign corporations,* shall, on or before the fifteenth day of April of each year, file a statement with the tax commissioner, giving the name and post office address of each person residing in Nebraska owning any of such stock or shares, together with the number of shares held by each person and the par and market value as of April first of that year. If any foreign corporation is

taxed in this state upon any tangible or intangible property, then the value of its gross shares of stock shall be ascertained by deducting from the actual value of such foreign corporation's paid up capital stock, surplus and undivided profits, the assessed value of its property taxed in this state, and thereafter the taxing officials of counties in which shares of stock of any such foreign corporation may be owned shall determine, in relation to such net value of the gross shares of stock, the value for assessment and 'taxation purposes of any such individual shares of stock in the hands of the resident owners."

The italicized language in the first sentence is the new provision inserted in the former provision. This is now, as amended, section 77-721, R. R. S. 1943. The second sentence above quoted is new and is now section 77-722, R. R. S. 1943.

Plaintiff contends here that the italicized amendment shows a legislative intent to exclude the domesticated foreign corporation stock from the provisions of section 77-722, R. R. S. 1943, and of necessity shows an intent that the stock should be valued for taxation under section 77-706, R. R. S. 1943, because there the corporation and not the owner is assessed, and hence a list of owners would be of no value to the Tax Commissioner whereas such a list would be of value under section 77-722, R. R. S. 1943, where the owner is assessed. We find nothing in the act, or in the history of its passage, to sustain such a conclusion. The reason for the insertion of the exception in what is now section 77-721, R. R. S. 1943, is not disclosed or suggested.

There is nothing in the title of the act to indicate a purpose to make such an exception. The "foreign corporations" mentioned in the title clearly refers to corporations "organized under the laws of any other state or country." Just as clearly the Legislature in the act recognized that the domesticated corporation was within the class of a foreign corporation. Just as clearly that

exception applies to the statement which the act required of those foreign corporations named in the act. Just as clearly the "any foreign corporation" referred to in what is now section 77-722, R. R. S. 1943, includes the domesticated corporation. The exception contained in section 77-721, R. R. S. 1943, is not in section 77-722, R. R. S. 1943, either as it exists now or as it was enacted. The first sentence, now section 77-721, R. R. S. 1943, applies to foreign corporations "transacting business in Nebraska or offering for sale in Nebraska any of its securities." The second sentence, now section 77-722, R. R. S. 1943, applies to "any" foreign corporation that is taxed in this state upon any tangible or intangible property. The "stock of any such foreign corporation," relates obviously to the latter classification of foreign corporations. It is in the same sentence with it and in the sentence which provides for the deduction of "the assessed value of its property taxed in this state."

At the time the original bill, which is now sections 77-721 and 77-722, R. R. S. 1943, was introduced there was pending in this court the case of Bute v. Hamilton County, 113 Neb. 230, 202 N. W. 616. The case was argued February 10, 1925. On February 19, 1925, the legislative committee reported a substitute bill, and the committee bill was passed in the House on March 12, 1925. (House Journal 1925, pp. 625, 895.) In the meantime, on March 6, 1925, our opinion in the Bute case was filed wherein we held: "Shares of stock in a foreign corporation, owned and in possession of a resident of this state, are taxable under section 5820, Comp. St. 1922, and not under section 5884, Comp. St., 1922, which latter provides for taxation of domestic corporations only." Section 5820, Comp. St. 1922, mentioned above, is now section 77-201, R. R. S. 1943, and section 77-112, R. R. S. 1943. Section 5884, Comp. St. 1922, mentioned above, is now section 77-706, R. R. S. 1943. The words "domestic corporations" as used in the above quote

are related in the opinion to mean "organized under the laws of this state."

To accept the argument of plaintiff we would have to infer that the Legislature by providing that the domesticated foreign corporation was not required to report the names of its resident stockholders thereby intended to except the shares of stock of such corporations from the provisions that it was then enacting applicable to "any foreign corporation."

But we could not stop there. To reach the conclusion for which the plaintiff contends we would also be required to put an inference on an inference, and hold that the Legislature intended to require that the stock of a domesticated foreign corporation was to be valued for taxation under what is now section 77-706, R. R. S. 1943. We had then clearly held in the Bute case that that provision applied only to corporations organized under the laws of this state. An amendment of section 77-706, R. R. S. 1943, would be required to make it applicable to the stocks of domesticated foreign corporations. Article III, section 14, of the Constitution provides: "* * * no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed." The 1925 act makes no reference to what is now section 77-706, R. R. S. 1943, but limited its amending and repealing provisions to what is now section 77-721, R. R. S. 1943. Obviously that inference cannot be accepted. There would remain an alternative inference on an inference that the Legislature intended to exempt domesticated foreign corporations' stock from all taxation. But that inference likewise cannot be accepted because of the constitutional provision that "No property shall be exempt from taxation except as provided in this section." Art. VIII, § 2, Constitution. Plaintiff does not contend that the Legislature intended this latter result.

It is agreed here that since the enactment of the intangible tax law domesticated foreign corporations have

filed returns upon their capital stock on forms used by domestic corporations and that generally owners of stock of domesticated foreign corporations have neither returned such shares nor paid any intangible tax upon their shares; that for at least 20 years prior to 1951 the county assessor's office of Douglas County considered such shares to be free from the intangible tax in the hands of the owners and that such stock was not to be assessed against the owner; and that since 1926 the county assessor's office of Lancaster County had a comparable view of the law and acted accordingly.

There appears to have been doubt in the minds of the taxing officials on that question. In 1930, the Attorney General advised a county attorney that in his opinion the shares of stock of a domesticated foreign corporation were taxable as shares of stock in a corporation organized under the laws of this state. He went further and stated that "if" regarded as a foreign corporation, its stocks were to be valued under the provisions of chapter 173, being the 1925 act, now section 77-722, R. R. S. 1943, and that in any event they were taxable as intangible property. The last conclusion was obviously correct. The first conclusion was erroneous. If not demonstrated as error at that time, the error was clearly apparent when the 1941 amendments were enacted and the Sautter opinion filed. This rather inconclusive opinion by the Attorney General was reported in the Report of the Attorney General, 1929-1930, p. 91, and probably gave support to the general administrative construction of the act.

Also in 1930, the Attorney General rendered an opinion holding that a domesticated foreign corporation was a "domestic" corporation and required to pay an occupation tax on the total amount of its paid-up capital stock. He based his opinion on the language of the domestication act. This opinion was reported in the Report of the Attorney General, 1929-1930, pp. 197, 198. The opinion does not cite the occupation tax statute

but the parties agree that the reference was to what is now section 21-303, R. S. Supp., 1951, which now includes an amendment of 1947.

The plaintiff argues here that the 1947 amendment confirmed the interpretation of the Attorney General. Even if that be so, it does not follow that it confirmed the reason for the conclusion reached. The title of the 1947 act is: "* * * to provide for the amount of occupation tax fees for corporations whether incorporated under the laws of this state or incorporated under the laws of any other state when such corporations shall have domesticated in this state; to provide how the par value of stock, issued without par value, of corporations organized under the laws of any other state and domesticated in this state shall be determined for such occupation tax purposes; * * *." Laws 1947, c. 55, p. 185. Prior to the amendment the beginning of section 21-303, R. S. 1943, provided that it shall be the duty of "every corporation, for profit incorporated under the laws of this state, to pay * * *." The Legislature inserted "whether" before "incorporated" and added "or incorporated under the laws of any other state, when such corporations shall have domesticated in this state." This amendment would have been unnecessary if the Legislature had considered that a domesticated corporation was a corporation organized under the laws of this state as plaintiff contends. But the Legislature went further and attached a proviso which reads as follows: "Provided, for the purpose of determining the tax, the stock of corporations incorporated under the laws of any other state, which corporations shall have domesticated in this state, and which stock is without par value, shall be deemed to have a par value of an amount equal to the amount paid in as capital for such shares at the time of issuance thereof." Here again is a legislative recognition of the fact that a domesticated foreign corporation is not a corporation organized under the laws of this state. It illustrates the necessity for that distinc-

tion. It recognizes that domesticated foreign corporations may have stock which is without par value. But the Constitution provides "all stock shall have a face par value." Art. XII, § 6, Constitution. That provision, applicable to corporations organized under the laws of this state, would prevent a foreign corporation whose "stock is without par value" becoming such a corporation. This is clear from the provision of Article XII, section 1, Constitution, that "Foreign corporations transacting or seeking to transact business in this state shall be subject, under general law, to regulation, supervision and general control, and shall not be given greater rights or privileges than are given domestic corporations of a similar character." We held in State ex rel. Beatrice Creamery Co. v. Marsh, 119 Neb. 197, 227 N. W. 926, that this provision refers to the granting of franchises and corporate privileges.

We refer back now to the provisions of section 21-1,152, R. S. 1943, which sets out what shall be done by a domesticated foreign corporation to become a corporation organized under the laws of this state. It is required, among other things, to file, record, and publish amended articles of incorporation as required by, among others, section 21-105, R. S. 1943. That section (in clause 8) calls for "the par value of each of such shares."

As showing a similar legislative intent it may be well here to refer to chapter 118, Laws 1947, page 349, which provided a method for computation of fees for filing articles of incorporation of a foreign corporation having stock without par value that domesticates in this state.

In 1942 the Tax Commissioner submitted a request for an opinion to the Attorney General on the question as to whether the individual owners of stock in a domesticated foreign corporation were required to list the stock as class B intangibles. See section 77-701, R. R. S. 1943. The Attorney General referred to section 77-701, Comp. St. 1929 (now as amended sections 77-701 to 77-707, R. R. S. 1943), as containing a formula for determining the

value of the shares of stock of a domestic corporation. He then referred to the 1941 amendments, now sections 21-1,150, 21-1,151, and 21-1,152, R. S. 1943; ruled that those amendments made no change in the status of the domesticated corporation; that it was still to be treated as a domestic corporation; and "may still, we believe, pay the taxes upon its shares of stock at the source." That opinion was dated March 2, 1942. See Report of Attorney General, 1939-1942, p. 199. Our opinion in In re Estate of Sautter, *supra*, was filed July 31, 1942. It does not seem to have had any impact upon the opinion of the Attorney General, nor the Tax Commissioner. It does not appear that thereafter any further inquiry was made into the matter until 1951, when on March 9, the Attorney General, in an opinion in response to a request of the Tax Commissioner, ruled that the assessment of shares of stock of a foreign corporation domesticated in Nebraska were not to be determined in the statutory manner prescribed for the shares of stock of a domestic corporation. Report of Attorney General, 1951-1952, p. 85.

The Tax Commissioner under section 77-305, R. R. S 1943, furnished approved forms for the listing and assessment of personal property. Prior to 1952, these forms provided one entry for a return of the "Value of Capital Stock Nebraska and Domesticated Corporations." A corporation return form was to the same effect. Just when these forms were first approved does not appear. They are submitted to show administrative application of the law to have been in accord with the contention of the plaintiff.

This brings us to plaintiff's contention that if its interpretation of the domestication statute is not clear and conclusive, then its construction is a reasonable one, but if the act is also capable of the construction put on it by defendant, then an ambiguity results which has been set at rest by long-standing administrative construction

and by legislative acts confirming and approving such interpretation.

Plaintiff here relies upon such cases as State ex rel. Village of Dakota City v. Bryan, 112 Neb. 692, 200 N. W. 870, followed in Chicago & N. W. Ry. Co. v. Bauman, 132 Neb. 67, 271 N. W. 256, wherein we held: "That construction of a statute of doubtful meaning given it by those whose duty it is to enforce it, and which construction the legislature has by its continued noninterference for a number of years acquiesced in, will be approved, unless as thus construed it contravenes some provision of the Constitution, or is clearly wrong."

Properly construed the domestication statute from the beginning recognized that the domesticated foreign corporation remained a foreign corporation. Whatever lack of definiteness there was in the original act was set at rest by the 1941 amendments modifying and supplementing the original act and by our opinion in In re Estate of Sautter, *supra.*

We have examined and analyzed herein the other statutes which plaintiff contends support its theory of legislative sanction. We find neither legislative non-interference nor legislative confirmation of the administrative construction. The legislative acts and judicial interpretation do not sustain but rather are directly contrary to plaintiff's contentions. They demonstrate that the administrative construction before the 1951 opinion of the Attorney General is "clearly wrong."

In Ehlers v. Farmers Mutual Ins. Co., 130 Neb. 368, 264 N. W. 894, we said in the body of the opinion: "* * * construction of a statute by an administrative or executive department of the state may be resorted to as an aid to the court in determining its meaning, but only where the court of last resort of the state has not previously interpreted the statute. After the court of last resort has placed an interpretation thereon, it is unthinkable that its ruling should be overturned by a construction placed thereon by an administrative or execu-

tive body. If such were the rule, then the decision of a court of last resort might, in effect, be overruled and overturned by showing that an administrative or executive department, charged with the administration of a statute, had previously given it a different construction." We there stated the rule: "When the court of last resort has judicially construed a statute, the rule permitting recourse to contemporaneous construction of the statute by administrative or executive officials, charged with the enforcement of such statute, is inapplicable." We followed this decision in City of Lincoln v. First Nat. Bank, 146 Neb. 221, 19 N. W. 2d 156. Considering our decision in In re Estate of Sautter, *supra,* the above rule also bars consideration of the administrative construction as in anywise controlling here.

It is stipulated that foreign corporations have domesticated in this state since the enactment of the intangible tax law; that the interpretation of the statutes that the shares of stock in such domesticated corporations are not taxable here in the hands of owners has been advertised by brokers, and has been an inducement to the purchase of such stocks; that purchasers have relied thereon; and that a holding that such stock is to be returned for taxation by the owners and subject to the intangible tax to be paid by the owners will reduce the market value of the stock with resulting damage to such owners. This is urged here as a basis for a holding in favor of plaintiff.

The above seems to be an argument that the state should be estopped to enforce the tax laws because of the error of administrative officials in construing the law.

The imperatives of a tax law cannot be set aside because of hardships on a taxpayer. We have held: "Statutory provisions for the levy of a tax are imperative." Howard v. Jensen, 117 Neb. 102, 219 N. W. 811.

We have held: " 'Public policy, to prevent loss to the state through the negligence of public officers, forbids

the application of the doctrine of estoppel to the state, growing out of the conduct and representations of its officers.' People v. Brown, 67 Ill. 435." Volker v. McDonald, 120 Neb. 508, 233 N. W. 890, 72 A. L. R. 1267.

We followed this rule in Goble v. Zolot, 144 Neb. 70, 12 N. W. 2d 311. There the question was one of classification of property for taxation. Was it personal property or a part of the real estate as fixtures? There it was claimed that the county board had advised that it considered the property to be a part of the real estate. We held it to be personal property. There we held: "Taxation and the collection of taxes are strictly governmental activities as distinguished from private and proprietary activities, and the public as to such activities cannot be estopped."

The parties here are in agreement that the stocks here involved are to be valued for taxation either under section 77-706, R. R. S. 1943, or under section 77-722, R. R. S. 1943. We conclude that they are to be valued for the purpose of taxation under the provisions of section 77-722, R. R. S. 1943. The trial court erred in decreeing otherwise.

The judgment of the district court is reversed and the cause remanded with directions to enter a decree in accord with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., dissenting.

This case involves the question as to the proper method of taxing the stock of Delaware corporations which domesticated in this state prior to August 24, 1941. The specific issue is whether section 77-706, R. R. S. 1943, or section 77-722, R. R. S. 1943, controls the result. If the former section is applicable the corporation is required to pay the tax assessed upon its stock for the owners thereof; if the latter is controlling, the tax is required to be paid by the resident owners.

The intangible tax law was enacted in 1921 and so far as applicable here it provided: "Moneys, gross

credits, including corporation shares or stocks, * * * shall be taxed on the basis of twenty-five per cent of the mill rate levied upon tangible property * * *. Such corporation shall pay the tax assessed upon its stock or shares and shall have a lien thereon for the same, * * *." Laws 1921, c. 133, art. VIII, § 1, p. 582. It was clearly the intention of this act that all corporate stock, whether that of a foreign corporation, a domesticated foreign corporation, or a domestic corporation, was to be taxed under the act. The foregoing statute, except for the amendment of 1925, remains unchanged insofar as the issues in the present case are concerned. Since its adoption foreign corporations which have domesticated under the laws of this state have been taxed in the same manner as domestic corporations under this act, which is now section 77-706, R. R. S. 1943.

In 1925 (Laws 1925, c. 173, § 1, p. 454) the Legislature enacted an amendment providing for the filing of statements by foreign corporations with the Tax Commissioner which in part provided: "Every corporation organized under the laws of any other state * * *, and not having complied with the requirements of the laws of Nebraska providing for the domestication of foreign corporations, shall, * * * file a statement with the tax commissioner, * * *." This portion of the amendment now appears as section 77-721, R. R. S. 1943. The only other sentence in the 1925 amendatory statute provides the manner of valuing such stock under the intangible tax law. Such sentence now appears as section 77-722, R. R. S. 1943. I submit that the exception contained in the first sentence of the 1925 act (section 77-721, R. R. S. 1943) excluding corporations organized under the laws of any other state *"not having complied with the requirements of the laws of Nebraska providing for the domestication of foreign corporations,"* applies to the whole paragraph in which it is contained in the 1925 act and that it does not lose its exclusionary characteristics merely because the Statute Commission saw fit to break

it up into two sections (sections 77-721 and 77-722, R. R. S. 1943) in the 1943 revision. The exclusionary provision inferentially applies to section 77-722, R. R. S. 1943, just as it expressly does to section 77-721, R. R. S. 1943. Unless it has this meaning it has no meaning at all. It is a familiar rule of statutory construction that no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. Only one meaning can be gleaned from the exclusionary language in the 1925 act,—that foreign corporations which have domesticated under the laws of Nebraska are not within the 1925 amendatory act and were intended by the Legislature to be treated the same as domestic corporations under the intangible tax law. An examination of the majority opinion on this point is sufficient to establish the validity of this contention. With reference to this exclusionary provision in the 1925 act the majority opinion says: "The reason for the insertion of the exception in what is now section 77-721, R. R. S. 1943, is not disclosed or suggested." By an arbitrary refusal to give the exception the one meaning that it has, the fundamental rule of construction referred to is heedlessly ignored. I submit that the generally accepted rules of statutory construction apply in all applicable cases. To make use of them in one case and to ignore them in another constitutes them a rule of man and not of law and gives credence to the false assertion that the law is what the Supreme Court says it is.

But for the purposes of this dissent I shall assume that there is grave doubt that the Legislature intended the exception to apply to both sentences in the 1925 act. From 1921 to 1951, a matter of 30 years, such has been the construction placed on it. An examination of the stipulation upon which this case was tried reveals the following facts which were agreed to: That, since the enactment of the intangible tax law in 1921, domesticated foreign corporations have filed returns for intangible tax upon their stock on the same forms used

by domestic corporations and that the owners of such stock have never returned it for taxation or paid any intangible tax thereon. That this method of handling by the taxing authorities has been specifically approved by opinions of the Attorney General under dates of April 4, 1930, and March 2, 1942, and that no opinion to the contrary was ever issued by such officer until March 9, 1951. That on November 25, 1930, the Attorney General ruled in part with reference to the corporation occupation tax statute as follows: "However in the enacting clause of Section 479 it is provided that the foreign corporation upon compliance with the provisions of said Section 479 shall be and become· a body corporate of this state. This language appears to us to be a plain, direct and unambiguous declaration that foreign corporations so complying with Section 479 are domestic corporations required to pay an occupation tax on the total amount of its paid-up capital stock as definitely ruled in Beatrice Creamery Co. v. Marsh, 227 N. W. 926, and since affirmed without opinion by the Supreme Court of the United States." Pursuant to this opinion domesticated foreign corporations have been required to pay an annual occupation tax on their entire paid-up capital stock as do domestic corporations, instead of on that portion of the capital of the company employed in the state as paid by nondomesticated foreign corporations. These provisions were carried forward into the act as amended in 1947. Laws 1947, c. 55, § 1, p. 185. It is also stipulated that the interpretation of the intangible tax law to the effect that the shares of stock of such domesticated foreign corporations are not taxable in the hands of the owners has been made public through advertisements and through brokers in making sales of stock, and has been an inducement to the purchase thereof by investors with the understanding and belief that such stock is not taxable in the hands of the owners. It is likewise stipulated that a present. holding that such stock is taxable in the hands of owners would reduce

the market value of such stock and work a resulting damage and injury to the owners thereof.

In addition to the foregoing stipulated facts I point out that in 1941 the Legislature enacted a new general corporation law in this state in which a domestic corporation is defined as a corporation organized under the laws of this state. Laws 1941, c. 41, p. 158; C. 21, a. 1, R. S. 1943. It defines a foreign corporation as including every corporation not organized under the laws of this state. § 21-101, R. S. 1943. Section 21-1,150, R. S. 1943, provides the method by which a corporation organized under the laws of another state shall become and be a body corporate in this state. ·Section 21-1,156, R. S. 1943, provides that all corporations now organized under articles 1, 2, or 3, of Chapter 24, Comp. St. 1929, shall operate under and be subject to the provisions of this act; provided, that no rights, privileges, and immunities vested or accrued by and under prior statutes and no duties, restrictions, liabilities, and penalties imposed or required by and under such statutes shall be impaired, diminished, or affected thereby. Any corporation organized under the laws of any other state which has domesticated in this state is within the purview of this saving clause, it being a corporation organized under Chapter 24, article 2, Comp. St. 1929. Instead of supporting the position of the majority it shows clearly the intent of the Legislature when it placed this saving clause in the act to continue, rather than change, the interpretation which had been placed upon the intangible tax act for 20 years prior thereto. It is strong evidence that the Legislature, after 20 years of operation of the act, intended that it should continue to be administered in the future as it had in the past. And it so continued to be administered until this suit was commenced 10 years later.

We have many cases handed down by this court where the administrative construction of a statute for a long period of time has been adhered to, particularly where

property rights have been acquired on the basis of such construction. I shall cite only a few.

In Douglas County v. Vinsonhaler, 82 Neb. 810, 118 N. W. 1058, we said: "It is conceded that the statute of 1877 has been construed by the administrative officers, whose duty it was to enforce the same, so as not to give a county judge the right to charge a fee for performing a marriage ceremony, or, at least, so as not to require any compensation which such county judge may have received for such performance of that ceremony, as the fees of his office, to be accounted for under the statute. It is one of the principles governing the interpretation and construction of statutes that, where the meaning of a statute is dubious, long usage is a just medium by which to expound it. * * * We think the operation of such a rule is just and salutary; and this court has gone so far as to hold that a construction so made will in some cases be regarded as adopted by the legislature, although the language of the statute would indicate a different meaning."

In State ex rel. Village of Dakota City v. Bryan, 112 Neb. 692, 200 N. W. 870, we said: "Section 5874 was enacted in 1907 as part of an entire act, and remained without change until 1921, when it was amended by repealing a part thereof. However, this amendment in no manner modified or changed the section as to matters here under consideration. Thus we conclude that the action of the legislature approved the correctness of the interpretation placed upon these statutes by the board." See, also, Chicago & N. W. Ry. Co. v. Bauman, 132 Neb. 67, 271 N. W. 256; State ex rel. Case Threshing Machine Co. v. Marsh, 117 Neb. 832, 223 N. W. 126.

In Mogis v. Lyman-Richey Sand & Gravel Corp., 189 F. 2d 130, the court said: "Administrative construction of a statute by the highest officer of an executive department charged with its enforcement, especially if it has long been adhered to, is also entitled in Nebraska to great weight in the judicial appraisal of the statute's

meaning. * * * And this is especially true in instances where such construction has been left undisturbed through several successive legislative sessions, * * *." See, also, Massachusetts Mut. Life Ins. Co. v. George & Co., 148 F. 2d 42.

It is noteworthy that the Legislature has seen fit to assess domesticated foreign corporations with an occupation tax on the same basis as domestic corporations, which is much higher than that assessed against non-domesticated foreign corporations. It is reasonable to believe that the Legislature intended also that intangible taxes should be assessed against such domesticated corporations in the same manner as domestic corporations. Such a construction of the statute would eliminate any question of unconstitutional discrimination between domesticated foreign corporations and domestic corporations. See Wheeling Steel Corp. v. Glander, 337 U. S. 562, 69 S. Ct. 1291, 93 L. Ed. 1544. I submit that a valid construction is legally required as against an invalid one.

For 30 years the taxing authorities of this state have assessed the stocks of domesticated foreign corporations under section 77-706, R. R. S. 1943. For 30 years the Attorneys General of this state have advised that this was the applicable statute. Fifteen regular sessions of the Legislature have been held without any attempt to change the administrative construction and application of the act. No court up to this time has held that such construction was not the correct one. The stocks of domesticated foreign corporations have been advertised and sold with the understanding that the intangible taxes thereon were paid up by the corporations and that the stocks in the hands of the owners were free from these taxes. Investments have been made and property interests acquired in such stocks on the basis of this contemporaneous and practical construction of the statute over the years, and owners will be damaged and injured by the change in meaning announced by the

majority. All the facts and circumstances indicate that the construction placed upon the act has been in good faith, with a full belief that the spirit of the law was being observed. In every instance under similar circumstances our decisions have adopted such contemporaneous, uniform, and long-continued construction of the law. It seems to me that if such construction is now to be changed after 30 years of bona fide reliance thereon, to the serious injury and damage of those who in good faith relied upon it, it ought to be inaugurated by the Legislature and not by the court. The decree of the trial court conforms with the previous holdings of this court, and in my opinion we should adhere thereto.

I am authorized to say that Chappell and Boslaugh, JJ., concur in this dissent.