**Affirmed and Memorandum Opinion filed December 31, 2019.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-18-00556-CR

**ERICK BACON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1563156**

## M E M O R A N D U M   O P I N I O N

Appellant Erick Bacon appeals his conviction for theft of an automated teller machine ("ATM"). He raises two issues. First, appellant argues that the trial court abused its discretion in denying his motion to suppress surveillance video because the video was not properly authenticated. Second, appellant argues that the trial court abused its discretion in denying his motion for a mistrial during voir dire, when the prosecutor "intimated" that appellant had previous convictions.

Because we conclude that the trial court did not abuse its discretion in either regard, we affirm the trial court's judgment.

## Background

At approximately one o'clock in the morning on August 29, 2017, appellant and several other men repeatedly rammed a vehicle into a PlainsCapital Bank ATM located outside the bank building. The group successfully dislodged the machine from its cement base. They attached a chain from the vehicle to the ATM and dragged the machine out of the bank's lot and into the street. There, after unchaining the ATM, appellant and the other men repeatedly drove the vehicle into the ATM in an unsuccessful attempt to force the machine open.

An eyewitness saw much of this activity from a nearby location and called 911. Police arrived on the scene, apprehended appellant, and conducted a "showup" at a nearby gas station.[1] The eyewitness identified appellant as "the person [she] saw . . . ramming the ATM."

A Harris County grand jury indicted appellant on the felony offense of theft of an ATM with a value of less than $300,000.[2] Appellant pleaded not guilty to the charge.

Prior to trial, appellant moved to suppress multiple videos taken from surveillance cameras on the bank's premises purporting to show the theft. Kimberly Watson, a regional operations manager for PlainsCapital Bank, was the sole witness who testified at the suppression hearing. One of the branch locations that Watson oversees is the location from which appellant and his accomplices stole the ATM. Watson testified that the bank has a video surveillance system

---

[1] A "showup," or "live lineup," as one officer explained at trial, occurs when an eyewitness identifies a suspect after police detain the suspect at or near a suspected crime scene.

[2] *See* Tex. Penal Code § 31.03(a), (e)(6)(B).

consisting of between seventeen and twenty-two surveillance cameras, including between six and eight exterior cameras. A third-party vendor, Tyco Integrated Security Company, maintains the video surveillance system.

Watson testified that shortly after the bank's security company contacted her on the date of the theft, she remotely logged into her work computer and watched the surveillance videos, which captured the theft. As she watched the videos, she saw they were date stamped August 29, 2017. Watson asserted that she knew the time and date stamp was accurate because she "run[s] checks frequently to make sure that transactions post to [a customer's] bank account at the same time [Watson] can see an ATM transaction" occur on the video system. Watson said that the bank's internal security department also checks the system for accuracy. After the incident, Watson asked the bank's security department to "pull[] [the videos] all up," and she then turned the videos over to the police department.

Watson also personally reviewed the videos that the State offered into evidence at the hearing. Although those copies lacked a time and date stamp, Watson agreed that the State's copies are the same videos she reviewed in real-time on August 29, 2017, and fairly and accurately represented the area depicted— the drive-through lanes and the ATM—on August 29, 2017.

At the conclusion of Watson's testimony, appellant argued that the surveillance videos should be suppressed because no time and date stamp appeared on the videos and thus "there is no way of proving that that video is the same video that the witness saw on the night of the event." The trial court denied appellant's motion.

The court proceeded to conduct voir dire, during which the State questioned the panel members' willingness to sentence appellant within the statutory guidelines. The second-degree felony offense with which appellant was charged

3

carried a potential punishment range of two to twenty years' confinement.[3] However, because appellant had been convicted of two prior felonies, the State initially intended to seek punishment in the enhanced range of twenty-five years to life.[4] During voir dire, the prosecutor explained that different classifications of felonies carry different punishment ranges. The prosecutor stated, "So, punishment range on this particular case is going to be a minimum of 25 years and a maximum of life in prison." Appellant objected and argued at a bench conference that the State could not say "that is the punishment range [because the prosecutor] hasn't proved that." The judge instructed the prosecutor to "[g]o through the full range of punishment. It might be just a second-degree felony." Appellant asked the judge to instruct the jurors to disregard, to which the judge stated that she would "let [the prosecutor] clear it up." Appellant then moved for a mistrial, which the court denied.

The case proceeded to trial on the merits, during which the eyewitness, three responding police officers, and Watson testified. The jury found appellant guilty as charged in the indictment. The trial court sentenced appellant in accordance with an agreed recommendation of twenty years' confinement.

Appellant timely appealed.

## Analysis

### A.   Motion to Suppress

In his first issue, appellant argues that the trial court should have suppressed the surveillance videos because the State failed to properly authenticate them.

---

[3] Tex. Penal Code §§ 31.03(e)(6)(B) (theft when value of property is less than $300,000 and the property stolen is an automated teller machine or the contents or components of an automated teller machine is a second-degree felony), 12.33(a) (punishment range for second-degree felonies).

[4] Tex. Penal Code § 12.42(d) (punishment range for habitual offenders).

Specifically, appellant contends that the videos were inadmissible because they lacked distinctive characteristics, such as a date and time stamp, and because the sponsoring witness did not have expertise or training in the equipment on which the videos were recorded.

### 1. *Applicable law and standard of review*

Texas Rule of Evidence 901 governs the authentication requirement for the admissibility of evidence:

> (a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

Tex. R. Evid. 901(a).

A party may establish authenticity with evidence of "distinctive characteristics and the like," which include "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Tex. R. Evid. 901(b)(4). Conclusive proof of authenticity before allowing admission of disputed evidence is not required. *See Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). Rule 901 "merely requires some evidence sufficient to support a finding that evidence in question is what the proponent claims." *Id.* (internal quotation omitted).

We review a trial court's ruling on suppression and authentication issues under an abuse of discretion standard. *Id.*; *see also Barfield v. State*, 416 S.W.3d 743, 749 (Tex. App.—Houston [14th Dist.] 2013, no pet.). This deferential standard requires an appellate court to uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Fowler*, 544 S.W.3d at 848. A trial court judge is given considerable latitude with regard to evidentiary rulings. *Id.* Different trial judges may "reach different conclusions in

5

different trials on substantially similar facts without abus[ing] [their] discretion." *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007).

If the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least "within the zone of reasonable disagreement," a reviewing court should not interfere. *Hunter v. State*, 513 S.W.3d 638, 640 (Tex. App.— Houston [14th Dist.] 2016, no pet.). In *Butler v. State*, the Court of Criminal Appeals clarified that "it is the jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims; the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015); *see also Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).

2. *Application*

The State presented the following circumstantial evidence to authenticate the video recordings:

- Watson's testimony that she logged into her work computer, accessed a computer program that allowed her to view video of "a specific time and date," and watched surveillance video of the ATM lane outside of the bank;

- Watson's testimony that when she first watched the videos on August 29, 2017, the videos were time and date stamped, showing the ATM lane on August 29, 2017;

- Watson's testimony that she regularly checks the accuracy of the time and date stamp on the surveillance video system;

- Watson's testimony that the videos offered by the State were the same videos she viewed on the day of the theft, except for the omission of the time and date stamp; and

- Watson's testimony that the videos accurately represented the bank's outside drive-through lanes and the ATM on August 29, 2017.

6

We conclude that the State supplied facts via Watson's testimony sufficient to support a reasonable jury determination that the videos were an authentic representation of the ATM lane on August 29, 2017. *Accord, e.g.*, *Thierry v. State*, 288 S.W.3d 80, 89 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding videotape of surveillance footage authenticated through loss prevention officer not present at the time of the incident when loss prevention officer described the surveillance system and how it worked, testified he had personally copied the surveillance onto videotape, viewed the tape prior to his testimony, and testified it fairly and accurately represented what it purported to show). While the State could have presented additional testimony from other witnesses who may have authenticated the video recordings independently of Watson, such as a video technician from the third-party security vendor in charge of maintaining the system, we disagree with appellant's contention that the State's attempt to authenticate the videos based solely on Watson's testimony is insufficient. "[A] zone of reasonable disagreement is exactly that—a zone," *Fowler*, 544 S.W.3d at 850, and we conclude that the trial court's decision here falls well within in it. Accordingly, the trial court did not abuse its discretion in denying appellant's motion to suppress the surveillance videos. We overrule appellant's first issue.

## B. Motion for Mistrial

In his second issue, appellant complains that the State violated appellant's fundamental right to a fair trial under article 36.01 of the Texas Code of Criminal Procedure because the prosecutor "intimated to the jury during voir dire that Appellant had previous felony convictions by telling the jury that in this specific case Appellant's punishment range was 25 years to life."[5]

---

[5] Appellant also contends that he was denied a fair trial under the Fourteenth Amendment to the United States Constitution, but he does not cite any authority to support the notion that the

7

### 1. *Applicable law and standard of review*

Both the State and the defense are entitled to question the jury panel on their willingness to follow the applicable law relating to enhanced punishments. *See Ganther v. State*, 187 S.W.3d 641, 652 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Martinez v. State*, 588 S.W.2d 954, 956 (Tex. Crim. App. [Panel Op.] 1979)). Such examinations, however, are subject to limits. Article 36.01 of the Texas Code of Criminal Procedure provides:

> The indictment or information shall be read to the jury by the attorney prosecuting. When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07.

Tex. Code Crim. Proc. art. 36.01(a).

Thus, "a prosecutor may inform the jury panel of the range of punishment applicable if the State were to prove a prior conviction for enhancement purposes, but it may not inform the jury of any of the specific allegations contained in the enhancement paragraph of a particular defendant's indictment." *Frausto v. State*, 642 S.W.2d 506, 509 (Tex. Crim. App. [Panel Op.] 1982). A violation of article 36.01 is reversible error. *Id.* at 508.

A mistrial is a device used to halt trial proceedings when error occurring during trial is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009) (per curiam). A mistrial is appropriate only in extreme circumstances "for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284

---

federal constitution provides different or greater protection than that afforded under article 36.01 in a situation such as this, and so we do not address his constitutional complaint. *See McDonald v. State*, No. 14-04-00401-CR, 2005 WL 1690615, at *1 (Tex. App.—Houston [14th Dist.] July 21, 2005, no pet.) (mem. op., not designated for publication).

S.W.3d 880, 884 (Tex. Crim. App. 2009). Whether a mistrial is required depends on the facts of the case. *Id.* A trial court should grant a mistrial "only when residual prejudice remains after less drastic alternatives are explored." *Id.* at 884-85 (internal quotation omitted). A mistrial should be exceedingly uncommon. *See Hudson v. State*, 179 S.W.3d 731, 738 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A denial of a motion for mistrial is reviewed under an abuse of discretion standard, and we must uphold a trial court's ruling if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

2. *Application*

Appellant does not contend and the record does not show that the prosecutor mentioned his prior convictions in any way. Rather, appellant posits that the prosecutor, by mentioning a sentencing range applicable to a multiple felony offender, "intimated" to the venire panel that appellant had previous convictions. According to appellant, by conveying to the venire panel that appellant faced a sentence between twenty-five years to life, "the prosecutor divulged information that an astute juror would understand that Appellant's punishment was . . . the result of prior convictions."

We disagree that the prosecutor's statement violated article 36.01 in this context. The prosecutor did not reference prior convictions or mention the State was seeking an "enhanced sentence,"[6] much less "recount[] virtually all of the allegations contained in the enhancement paragraph of the indictment." *Frausto*, 642 S.W.2d at 508. The prosecutor made no statement suggesting how or why the punishment range mentioned initially applied. Even presuming that a

---

[6] As set forth above, the prosecutor stated during voir dire, "So, punishment range on this particular case is going to be a minimum of 25 years and a maximum of life in prison."

veniremember was familiar enough with the Texas Penal Code to know that the punishment range for the offense charged was between two and twenty years' confinement, and further would have deduced from the prosecutor's reference to twenty-five years to life that the State was alleging that appellant had committed other felonies, that circumstance would not warrant a mistrial. There was no danger of prejudicing the venire panel by announcing that the State believed appellant "was previously convicted of a particular offense at a particular time and in a particular court." *Id.*; *see also Rushing v. State*, No. 08-05-00365-CR, 2007 WL 2405797, at *5 (Tex. App.—El Paso Aug. 23, 2007, pet. ref'd) (mem. op., not designated for publication) ("The prosecutor's comment that 'probation is not an issue' did not violate Article 36.01 or exceed what is permissible under *Frausto* because, even assuming that the potential jurors would necessarily have understood that probation was unavailable because Appellant had a prior conviction, it did not inform the jury of the specifics of the prior conviction.").

We conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial, and accordingly we overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.


/s/    Kevin Jewell
          Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.
Do Not Publish — Tex. R. App. P. 47.2(b).